## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| DEBORAH MOSS, and | ) | |
| WILLIAM HILLICK, | ) | |
| on Behalf of Themselves and All | ) | Case No. 13-CV-5438 |
| Others Similarly Situated, | ) | |
| | ) | Hon. Joseph F. Bianco |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BMO HARRIS BANK, N.A., | ) | |
| FIRST PREMIER BANK, a South | ) | |
| Dakota State-Charted Bank, and | ) | |
| BAY CITIES BANK, a Florida | ) | |
| State-Chartered Bank. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT BMO HARRIS BANK, N.A.'S MEMORANDUM OF LAW IN SUPPORT OF ITS RULE 12(b)(6)-(7) AND 19 MOTION TO DISMISS

Therese Craparo
MAYER BROWN LLP
1675 Broadway
New York, New York 10019-5820
(212) 506-2500 (Telephone)
(212) 262-1910 (Facsimile)
tcraparo@mayerbrown.com

Lucia Nale (pro hac vice)
Debra Bogo-Ernst (pro hac vice)
Matthew Sostrin (pro hac vice)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, IL 60606
(312) 782-0600 (Telephone)
(312) 701-7711 (Facsimile)
lnale@mayerbrown.com
dernst@mayerbrown.com
msostrin@mayerbrown.com

Kevin S. Ranlett (pro hac vice)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, D.C. 20006-1101
(202) 263-3000 (Telephone)
(202) 263-3300 (Facsimile)
kranlett@mayerbrown.com

*Attorneys for BMO Harris Bank, N.A.*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

BACKGROUND ...................................................................................................2

ARGUMENT .......................................................................................................4

    I.    Plaintiffs Failed To Join Indispensable Parties: Their Lenders ............................4

    II.    Even Putting Aside Plaintiffs' Failure to Join Their Lender, The Complaint Fails To  State A Civil RICO Claim ........................................9

        A.    Plaintiffs Fail To Plead A Cognizable Association-In-Fact Enterprise ...............................................................................10

        B.    Plaintiffs Fail To Plead That BMO Harris Conducted Or Participated In The Conduct Of The Enterprise's Affairs ......................12

        C.    BMO Harris Is Not In The Business Of Making Usurious Loans And Did Not "Collect" Unlawful Debt ....................................14

        D.    Plaintiffs Have Not Adequately Alleged That BMO Harris Had Knowledge Of The Purportedly Unlawful Conduct ...............................17

    III.    Plaintiffs Fail To State Plausible Claims Under New York Law ........................19

        A.    Plaintiffs Fail To State A Claim For Aiding And Abetting Their Lenders' Purported Violations Of New York's Civil Usury Statute ........19

        B.    Plaintiffs Fail To State A Claim For Assumpsit ....................................20

        C.    Plaintiffs Fail To State A Claim For Unjust Enrichment ........................21

        D.    Plaintiffs Fail To State A Claim Under New York GBL § 349 ..............22

CONCLUSION ....................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*3801 Beach Channel v. Shvartzman*,
   2011 WL 1303812 (E.D.N.Y. Mar. 31, 2011)...................................................................19

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*,
   651 F. Supp. 2d 155 (S.D.N.Y. 2009) ..............................................................................19

*Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*,
   660 F. Supp. 1362 (D. Conn. 1987) ............................................................................17, 18

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) ..................................................................................................9, 18

*Azirelli v. Cohen Law Offices*,
   21 F.3d 512 (2d Cir. 1994) ...............................................................................................13

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ...........................................................................................................9

*Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.*,
   818 N.E.2d 1140 (N.Y. 2004) ...........................................................................................19

*Boyle v. United States*,
   556 U.S. 938 (2009) .........................................................................................................10

*Brenner v. Brenner*,
   821 F. Supp. 2d 533 (E.D.N.Y. 2011)...............................................................................22

*Caribbean Telecomm. Ltd. v. Guyana Tel. & Tel. Co.*,
   594 F. Supp. 2d 522 (D.N.J. 2009).....................................................................................6

*Carmona v. Spanish Broad. Sys., Inc.*,
   2009 WL 890054 (S.D.N.Y. Mar. 30, 2009).....................................................................22

*Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
   511 U.S. 164 (1994) .........................................................................................................19

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ...............................................................................................8

*Corsi v. Eagle Publishing, Inc.*,
   2008 WL 239581 (D.D.C. Jan. 30, 2008).......................................................................7, 8

*CP Solutions PTE, Ltd. v. General Electric Co.*,
    553 F.3d 156 (2d Cir. 2009) ............................................................... 5

*Dubai Islamic Bank v. Citibank, N.A.*,
    256 F. Supp. 2d 158 (S.D.N.Y. 2003) ................................................. 9

*Durante Bros. & Sons v. Flushing Nat'l Bank*,
    755 F.2d 239 (2d Cir. 1985) ......................................................... 14, 15

*Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*,
    744 F. Supp. 450 (S.D.N.Y. 1990) ..................................................... 6

*Excalibur Sys., Inc. v. Aerotech World Trade, Ltd.*,
    1999 WL 1281496 (E.D.N.Y. Dec. 30, 1999) .................................. 20

*Fluent v. Salamanci Indian Lease Auth.*,
    928 F.2d 542 (2d Cir. 1991) ............................................................... 5

*Fraternity Fund v. Beacon Hill Asset Mgmt*,
    479 F. Supp. 2d 349 (S.D.N.Y. 2007) .............................................. 19

*Georgia Malone & Co. v. Rieder*,
    973 N.E.2d 743 (N.Y. 2012) ............................................................ 22

*Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*,
    960 F. Supp. 701 (S.D.N.Y. 1997) .................................................. 4, 5

*Goren v. New Vision Intern., Inc.*,
    156 F.3d 721 (7th Cir. 1998) ........................................................... 13

*Hardy v. IGT, Inc.*,
    2011 WL 3583745 (M.D. Ala. Aug. 15, 2011) ................................ 5, 8

*Hill v. Coulter*,
    1998 WL 460239 (N.D.N.Y. July 31, 1998) ................................ 5, 7, 8

*In re Ins. Brokerage Antitrust Litig.*,
    2007 WL 1062980 (D.N.J. Apr. 5, 2007) ..................................... 10, 12

*Jubelirer v. MasterCard Int'l, Inc.*,
    68 F. Supp. 2d 1049 (W.D. Wis. 1999) .................................. 11, 12, 13

*Kermanshah v. Kermanshah*,
    2010 WL 1904135 (S.D.N.Y. May 11, 2010) ............................... 5, 6, 8

*Kirschner v. Bennett*,
    648 F. Supp. 2d 525 (S.D.N.Y. 2009) .............................................. 20

*Luvdarts, LLC v. A T & T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ........................................................................ 18

*M+J Savitt, Inc. v. Savitt*,
    2009 WL 691278 (S.D.N.Y. Mar. 17, 2009) .................................................. 22

*Mandarin Trading Ltd. v. Wildenstein*,
    944 N.E.2d 1104 (N.Y. 2011) ........................................................................ 21

*Marini v. Adamo*,
    812 F. Supp. 2d 243 (E.D.N.Y. 2011) ........................................................... 23

*Maurizio v. Goldsmith*,
    230 F.3d 518 (2d Cir. 2000) .......................................................................... 23

*Moore v. Fid. Fin. Servs.*,
    897 F. Supp. 378 (N.D. Ill. 1995) .................................................................. 10

*Morrissey v. Nextel Partners, Inc.*,
    895 N.Y.S.2d 580 (N.Y. App. Div. 2010) ..................................................... 23

*Nastro v. D'Onofrio*,
    542 F. Supp. 2d 207 (D. Conn. 2008) ............................................................ 13

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) ....................................................................................... 17

*Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*,
    647 N.E.2d 741 (N.Y. 1995) .......................................................................... 23

*People v. Miami Nation Enter.*,
    2014 WL 216318 (Cal. Ct. App. Jan. 21, 2014)........................................... 1, 8

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) ....................................................................................... 12

*Silverman Partners, LP v. First Bank*,
    687 F. Supp. 2d 269 (E.D.N.Y. 2010) ........................................................... 19

*Sperry v. Crompton Corp.*,
    863 N.E.2d 1012 (N.Y. 2007) .................................................................. 20, 21

*Spoto v. Herkimer Cty. Trust*,
    2000 WL 533293 (N.D.N.Y. Apr. 27, 2000).................................................. 9

*Super Vision Int'l, Inc. v. Mea Int'l Commercial Bank Co.*,
    534 F. Supp. 2d 1326 (S.D. Fla. 2008) .......................................................... 13

*T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*,
   2010 WL 4038826 (E.D.N.Y. Oct. 14, 2010) ..................................................21

*Travelers Indem. Co. v. Household Int'l, Inc.*,
   775 F. Supp. 518 (D. Conn. 1991) ...........................................................5

*United States v. Dennis*,
   458 F. Supp. 197 (E.D. Mo. 1978) ..........................................................12

*United States v. Giovanelli*,
   945 F.2d 479 (2d Cir. 1991) .................................................................15

*United States v. Pepe*,
   747 F.2d 632 (11th Cir. 1984) ..............................................................16

*United States v. Persico*,
   2011 WL 2433728 (E.D.N.Y. June 14, 2011) ..................................................15

*United States v. Tribal Dev. Corp.*,
   100 F.3d 476 (7th Cir. 1996) .................................................................6

*United States v. Turkette*,
   452 U.S. 576 (1981) ........................................................................10

*Walker v. Hallmark Bank & Trust, Ltd.*,
   707 F. Supp. 2d 1317 (S.D. Fla. 2010) .....................................................13

*Yashenko v. Harrah's NC Casino Co.*,
   446 F.3d 541 (4th Cir. 2006) .................................................................6

## STATUTES

18 U.S.C. § 891(5) ...............................................................................16

18 U.S.C. § 1961(4) ..............................................................................10

18 U.S.C. § 1962(c) ..........................................................................passim

18 U.S.C. § 1962(d) ............................................................................3, 10

Ala. Code § 8-1-150(a) ..........................................................................5, 6

N.Y. Gen. Bus. Law § 349 .....................................................................22, 23

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a)(2) ...........................................................................9

Fed. R. Civ. P. 12(b)(6) .........................................................................2, 8

Fed. R. Civ. P. 12(b)(7) ...................................................................................1, 2, 8

Fed. R. Civ. P. 19 ...........................................................................................passim

Fed. R. Civ. P. 19(a) ...............................................................................................4

Fed. R. Civ. P. 19(b) ...............................................................................................4

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure
    § 1359 (3d ed. 2007)...........................................................................................8

## INTRODUCTION

Plaintiff William Hillick alleges that he entered into two agreements for payday loans with an online lender owned by the Miami Tribe of Oklahoma. Plaintiff Deborah Moss alleges that she entered into an agreement for a payday loan with an online lender based in Costa Rica.[1] When Plaintiffs obtained their loans, they admittedly authorized their lenders to electronically debit their bank accounts as payments came due. Plaintiffs now allege that their loans were usurious under New York law and seek relief. But instead of pursuing claims against their lenders, Plaintiffs filed this putative class action against BMO Harris Bank, N.A. ("BMO Harris"). According to Plaintiffs, BMO Harris should be held liable for processing the electronic fund transfers between them and their lenders, an otherwise routine banking function.

Plaintiffs' complaint (Dkt. 38) should be dismissed for several reasons. First, pursuant to Federal Rules of Civil Procedure 12(b)(7) and 19, Plaintiffs' complaint should be dismissed because their lenders are necessary and indispensable parties. Each of Plaintiffs' claims against BMO Harris requires a determination that the underlying loan agreements violate New York usury laws. Plaintiffs also seek equitable relief that significantly affects their lenders' interests. But neither lender can be joined. Hillick's lender is protected by tribal sovereign immunity. *See People v. Miami Nation Enter.*, 2014 WL 216318 (Cal. Ct. App. Jan. 21, 2014) (dismissing enforcement action against the same tribal lender at issue here). Moreover, Hillick's and Moss's lenders cannot be joined because any claims against them are subject to arbitration.[2]

---

[1] Moss also alleges that she obtained other payday loans from other lenders, but her claims involving those loans relate to other defendants, not BMO Harris. BMO Harris has separately moved to sever those claims from the claims against BMO Harris.

[2] Relying on the same arbitration agreements, BMO Harris has moved to compel arbitration of the claims asserted against it as well, and submits this motion in the alternative.

Second, even if Plaintiffs could somehow overcome Rules 12(b)(7) and 19, their complaint fails for the independently dispositive reason that they have not stated plausible claims for relief under Rule 12(b)(6). To start, Plaintiffs' Racketeer Influenced and Corrupt Organizations Act ("RICO") claim is without merit. Plaintiffs seek an unprecedented expansion of RICO liability to cover any entity that "participate[s] in the collection of unlawful debts." Am. Compl. ¶ 125. That is not what RICO says. Plaintiffs fall far short of pleading a viable civil RICO claim. In addition, Plaintiffs fail to state plausible claims against BMO Harris under New York law. For these reasons, the complaint should be dismissed.

## BACKGROUND

Plaintiffs' claims against BMO Harris involve BMO Harris's role in the ACH network, an electronic payment processing system in which financial institutions accumulate transactions throughout the day for later batch processing. Am. Compl. ¶ 35.

An ACH transaction has several steps. *Id.* ¶ 40. First, a customer authorizes a transaction with a merchant. *Id.* Second, the merchant (an "Originator") communicates the authorization either directly to a bank and member of the ACH network (an "Originating Depository Financial Institution" or "ODFI"), or through a third party that has an agreement with the ODFI (a "Third-Party Sender"). *Id.* ¶¶ 40-41. Third, the ODFI transmits the authorization through an "ACH Operator" to the customer's bank (a "Receiving Depository Financial Institution" or "RDFI"). *Id.* ¶ 40. The RDFI then debits its customer's bank account. *Id.* An entity known as "NACHA" manages the development, administration, and governance of the ACH network. *Id.* ¶ 39.

In September 2012, Hillick obtained a $550 loan from MNE Services, Inc., doing business as Ameriloan, which holds itself out as a tribal lending entity wholly owned by the Miami Tribe of Oklahoma. *Id.* ¶¶ 16c, 99. In June 2013, Hillick obtained a second, $750 loan

from MNE Services, this time doing business as United Cash Loans. *Id.* ¶ 104. As part of the application process, Hillick authorized MNE Services to debit his checking account with Empower Federal Credit Union in order to repay the loans. *Id.* ¶¶ 99, 104. When Hillick's payments came due, MNE Services originated three transactions on the ACH network totaling $350 with BMO Harris purportedly serving as the ODFI, *i.e.*, allegedly processing the electronic fund transfers. *Id.* ¶¶ 103, 107.

In May 2013, Moss obtained a $1,000 loan from Lenders International based in Costa Rica. *Id.* ¶¶ 16a, 90. As part of the application process, Moss authorized Lenders International to debit her checking account with TD Bank in order to repay the loan. *Id.* ¶ 90. When one of Moss's payments came due, Lenders International originated a transaction on the ACH network for $940 with BMO Harris purportedly serving as the ODFI. *Id.* ¶ 93.

Plaintiffs filed this action on behalf of themselves and members of a purported class of New York borrowers. *Id.* ¶ 109. Plaintiffs did not name MNE Services or Lenders International as defendants, although they did identify their lenders in the complaint as "other persons and entities." *Id.* ¶ 16. Plaintiffs assert claims against BMO Harris for purportedly violating and conspiring to violate RICO, 18 U.S.C. §§ 1962(c)-(d), and under several state law theories. Plaintiffs seek injunctive relief prohibiting BMO Harris from serving as an ODFI for "Illegal Online Payday Lenders" and ask the Court to direct BMO Harris "to immediately credit to all . . . borrowers, any money it has debited from borrowers' accounts but has not yet remitted to Illegal Online Payday Lenders." *Id.* ¶ 109. Plaintiffs also seek to recover alleged monetary damages, including a refund of every debit processed by BMO Harris, trebled. *Id.* at p. 63-64.

As shown below, Plaintiffs' complaint both fails to join an indispensable party and to state a plausible claim for relief. Accordingly, the lawsuit should be dismissed.

3

## ARGUMENT

**I.      Plaintiffs Failed To Join Indispensable Parties: Their Lenders.**

Rule 19 requires dismissal where, as here, an indispensable party cannot be joined. Rule 19 involves a two step inquiry. First, the court "must determine whether the absent party is 'necessary' under [Rule] 19(a)." *Global Discount Travel Servs., LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707 (S.D.N.Y. 1997) (Sotomayor, J.). A party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

Second, if the party is necessary and cannot be joined, the court must determine "whether under the circumstances of the particular case, the court could, in equity and good conscience, proceed in the party's absence." *Global Discount*, 960 F. Supp. at 707 (quotations and citations omitted). Rule 19(b) identifies four factors for courts to consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for non-joinder.

Fed. R. Civ. P. 19(b). Rule 19(b) allows courts "to determine the emphasis to be placed on each consideration according to the facts of the given case and in light of the governing equity-and-good conscience test," but when a necessary party is immune from suit, "there is very little room for balancing of other factors set out in rule 19(b), because immunity may be viewed as one of

4

those interests compelling by themselves." *Fluent v. Salamanci Indian Lease Auth.*, 928 F.2d

542, 547-48 (2d Cir. 1991) (quotations and citations omitted).

As parties to the loan agreements at issue in this case, MNE Services and Lenders

International are each necessary and indispensable parties. *See, e.g., Kermanshah v.

Kermanshah*, 2010 WL 1904135, at *3 (S.D.N.Y. May 11, 2010) ("It is well established that a

party to a contract which is the subject of litigation is considered a necessary party.") (quotations

and citations omitted); *Hill v. Coulter*, 1998 WL 460239, at *1-2 (N.D.N.Y. July 31, 1998)

(explaining that "[i]t is well settled that in an action to set aside a contract, 'all parties who may

be affected by the determination of the action are indispensable,'" and "prejudice is almost

presumed given that a contracting party is often the prime example of illustrating a prejudiced

party"); *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991)

("a contracting party is the paradigm of an indispensable party"); *Global Discount*, 960 F. Supp.

at 708 (explaining that a contracting party's "attempts to protect its interest . . . may be

practically impaired or impeded by proceeding with this action in its absence").[3]

For example, in *Hardy v. IGT, Inc.*, 2011 WL 3583745, *1 (M.D. Ala. Aug. 15, 2011),

the plaintiff alleged that she lost money playing electronic bingo at casinos owned by the Poarch

Band of Creek Indians. But instead of suing the tribe, the plaintiff brought claims on behalf of

herself and a putative class against the manufacturers of the bingo machines. The plaintiff

asserted a claim under Ala. Code § 8-1-150(a), which allows individuals to recover their losses

---

[3] In *CP Solutions PTE, Ltd. v. General Electric Co.*, 553 F.3d 156, 159 (2d Cir. 2009), the Second Circuit held that there is no "bright-line rule" that parties to a contract are always indispensable. Nonetheless, for the reasons discussed herein, Plaintiffs' lenders would be significantly prejudiced if this suit proceeds without them and dismissal is appropriate.

from illegal gambling. *Id.* at *4. The court concluded that the tribe was an indispensable party and dismissed the claims against the manufacturers. *Id.* at *8. As the court explained:

> Necessary to [plaintiff's] state law cause of action is a determination that the electronic bingo played on the Tribe's real estate and in its Casinos violates Alabama and/or federal law. One struggles to envision a more severe practical impediment to the Tribe's interests in its Casinos and related business arrangements. . . . Were this action to proceed in the absence of the Tribe, the validity and viability of the Tribe's contracts with the Manufacturers would be impeded, [and] the enforceability of gambling contracts between gamblers and the Tribe would be called into question. . . .

*Id.* at *5 (citations omitted). *Accord Yashenko v. Harrah's NC Casino Co.*, 446 F.3d 541, 552-53 (4th Cir. 2006) (holding that where Harrah's had an agreement with an Indian tribe to operate a casino, Rule 19 required dismissal of a former employee's discrimination claim against Harrah's because "such a claim would threaten 'to impair the [tribe's] contractual interests, and thus, its fundamental economic relationship with' the private party, as well as 'its sovereign capacity to negotiate contracts and, in general, to govern' the reservation.") (citations omitted); *United States v. Tribal Dev. Corp.*, 100 F.3d 476, 480 (7th Cir. 1996) ("In a larger sense, the precedent set by rescission of transactions freely entered by the tribes would likely be extremely prejudicial to the tribes' long term interest in Indian gaming and the revenue it provides.").

A plaintiff also cannot avoid joining a contracting party by pleading tort claims that nonetheless challenge a contract's validity. *See, e.g., Kermanshah*, 2010 WL 1904135, at *5 (dismissing tort claims that were "inextricably intertwined with and derived from the alleged contractual relationship"); *Ente Nazionale Idrocarburi v. Prudential Sec. Group, Inc.*, 744 F. Supp. 450, 459-60 (S.D.N.Y. 1990) ("Although [plaintiff] argues that it is suing . . . in tort here, and that the contract action . . . is entirely separate . . ., we believe that such an argument elevates form over substance. . . . [I]t cannot be denied that it would be necessary for us to construe several of the critical provisions of the Agreement."); *Caribbean Telecomm. Ltd. v. Guyana Tel.*

6

*& Tel. Co.*, 594 F. Supp. 2d 522, 532 (D.N.J. 2009) (dismissing tort claims where contract "serves as the basis" for the claims); *Corsi v. Eagle Publishing, Inc.*, 2008 WL 239581, at *1 (D.D.C. Jan. 30, 2008) (dismissing tort claims where contract was the "crux" of the action).

Plaintiffs' claims against BMO Harris collaterally attack Plaintiffs' loan agreements with MNE Services and Lenders International and require a determination that the agreements violate New York usury laws. *See, e.g.,* Am. Compl. ¶¶ 123a, 129a (alleging that the agreements are "unenforceable because of state or federal laws against usury" and were "incurred in connection with the business of lending money at an usurious rate"); ¶¶ 169, 176, 185-86, 196 (alleging that the agreements and/or the lenders violated New York law). As a result, all of Plaintiffs' claims against BMO Harris in this case would require the Court to determine the legality and enforceability of their loan agreements with their lenders. The lenders thus would be greatly prejudiced if this case were allowed to proceed in their absence.

Plaintiffs' lenders' interest is further heightened because of the equitable relief sought by Plaintiffs. In particular, Plaintiffs seek an injunction that would require BMO Harris to divert funds *otherwise belonging to MNE Services and Lenders International* to Plaintiffs and other borrowers. *Id.* ¶ 199. Plaintiffs' lenders certainly have an interest to protect with respect to any funds already debited from borrowers on their behalf. Moreover, Plaintiffs seek to prohibit BMO Harris from serving as an ODFI for lenders. *Id.* But as Plaintiffs allege, "NACHA Rules require[] ODFIs to enter into a written agreement with every Third-Party Sender or Originator (or merchant) for whom they originate ACH entries." *Id.* ¶ 52. The injunctive relief sought by Plaintiffs would effectively void any such origination agreements, prejudicing the lenders. *See, e.g., Hill*, 1998 WL 460239, at *2 (holding that the Onondaga Tribe would be "substantially prejudiced" if it was not a party to a lawsuit seeking a declaration that its contract violated

7

federal law). Thus, "where, as here, equitable relief is sought in addition to monetary damages, the presence of all parties is necessary." *Kermanshah*, 2010 WL 1904135, at *3.

Finally, Plaintiffs' lenders cannot be joined. In *People v. Miami Nation Enter.*, 2014 WL 216318 (Cal. Ct. App. Jan. 21, 2014), the court examined at length whether Hillick's lender, MNE Services (including its Ameriloan and United Cash Loans operations), was an arm of the Miami Tribe of Oklahoma and entitled to invoke tribal sovereign immunity. The court held that it was, and therefore dismissed an action filed by the Commissioner of the California Department of Corporations alleging that MNE Services made payday loans in violation of California law. Moreover, as BMO Harris shows in its motion to compel arbitration, any claims Plaintiffs might assert against MNE Services and Lenders International would be subject to the arbitration provisions in their loan agreements. This too prevents joinder of Plaintiffs' lenders, requiring dismissal. *See, e.g., Corsi*, 2008 WL 239581, at *1 ("The crux of plaintiffs' action is their claim that Regnery breached the publishing contracts, and since Regnery cannot be joined in this action because of the arbitration clause, this case must be dismissed.").[4]

Plaintiffs would still have an adequate remedy if this action were dismissed for non-joinder. As discussed in BMO Harris's motion to compel arbitration, the loan agreements between Plaintiffs and their lenders provide for an arbitration process to resolve any disputes involving the loans. Thus, although courts have dismissed claims under Rule 19 for failure to join an indispensable Indian tribe where the plaintiff would then be left without *any* remedy because of the tribe's sovereign immunity—see, e.g., *Hill*, 1998 WL 460239, at *2, and *Hardy*,

---

[4] For purposes of Rule 12(b)(7) and 19, the Court "is not limited to the pleadings." 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1359 (3d ed. 2007). Moreover, even under Rule 12(b)(6), the Court may consider documents such as the loan agreements which are referenced in the complaint and central to the plaintiffs' claims. *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 & n.3 (2d Cir. 2002).

2011 WL 3583745, at *7-8—that is not the case here. Plaintiffs could still pursue claims under the loan agreements' arbitration provisions, including against MNE Services, who waived sovereign immunity with respect to the arbitration process. For these reasons, Plaintiffs' complaint should be dismissed because this case cannot proceed without their lenders.

## II. Even Putting Aside Plaintiffs' Failure to Join Their Lender, The Complaint Fails To State A Civil RICO Claim.

As courts have recognized, "the civil provisions of [RICO] are the most misused statutes in the federal corpus of law." *Spoto v. Herkimer Cty. Trust*, 2000 WL 533293, at *1 (N.D.N.Y. Apr. 27, 2000). Given the potency of civil RICO, the frequency of its abuse, and the "inevitable stigmatizing effect" of a RICO claim, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Dubai Islamic Bank v. Citibank, N.A.*, 256 F. Supp. 2d 158, 163 (S.D.N.Y. 2003) (quotations and citation omitted).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007), holds that Federal Rule of Civil Procedure 8(a)(2) "requires a 'showing,' rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also the 'grounds' on which the claim rests." The Supreme Court clarified in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), that to satisfy Rule 8(a)(2), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Plaintiffs allege that BMO Harris violated 18 U.S.C. § 1962(c), which makes it unlawful "to conduct or participate, directly or indirectly, in the conduct of [an] enterprise's affairs through . . . collection of unlawful debt." Plaintiffs also allege that BMO Harris conspired with

MNE Services and Lenders International to violate RICO. 18 U.S.C. § 1962(d). Plaintiffs' civil RICO claims fail because they have not plausibly alleged: (1) an "enterprise"; (2) that BMO Harris "conduct[ed] or participate[d] . . . in the conduct of such enterprise's affairs"; (3) that BMO Harris engaged in the business of making usurious loans or "collect[ed] unlawful debt"; or (4) that BMO Harris had knowledge of the purportedly unlawful conduct.

### A.   Plaintiffs Fail To Plead A Cognizable Association-In-Fact Enterprise.

An association-in-fact enterprise under RICO is "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The existence of an enterprise "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit" "associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). The existence of an enterprise is "a separate element" from the alleged conduct "which must be proved by the [plaintiff]." *Id.*

Plaintiffs allege that participants in the ACH network are an association-in-fact enterprise because they purportedly "share a common purpose of facilitating large volume batch processing of electronic payments (credit and debit transactions) for and between participating depository financial institutions." Am. Compl. ¶¶ 118-19 (the "ACH Enterprise").

But as many courts have recognized, because an enterprise requires a "common purpose of engaging in a course of conduct," *Turkette*, 452 U.S. at 583, *Boyle v. United States*, 556 U.S. 938, 944 (2009), sweeping combinations of legitimate businesses are not proper association-in-fact enterprises under RICO. *See, e.g., In re Ins. Brokerage Antitrust Litig.*, 2007 WL 1062980, at *23-24 (D.N.J. Apr. 5, 2007) (allegations that "implicated the entire insurance carrier industry" were "amorphous *per se*" and legally insufficient to plead an enterprise); *Moore v. Fid. Fin. Servs.*, 897 F. Supp. 378, 379 (N.D. Ill. 1995) (rejecting attempt to plead an enterprise

10

consisting of the combination of a bank and automobile dealers with whom it had relationships because enterprise was excessively "open-ended" and "nebulous").

*Jubelirer v. MasterCard Int'l, Inc.*, 68 F. Supp. 2d 1049 (W.D. Wis. 1999), is particularly instructive. In *Jubelirer*, the plaintiff lost money gambling online. The plaintiff claimed that the online casino was illegal and filed a civil RICO claim against MasterCard and MBNA American Bank for participating in the transfer of funds to the casino. *Id.* at 1051. Much like the ACH network, MasterCard operates an electronic system for credit card transactions and provides authorization, processing, and settlement services. The court rejected the plaintiff's claim that the online casino, MasterCard, and MBNA were a RICO "enterprise," explaining that "plaintiff's allegations . . . would lead to the absurd conclusion that each of the many million combinations of merchant, MasterCard and lender is a RICO enterprise." *Id*. at 1053. The court concluded that to extend RICO to cover such "a routine contractual combination for the provision of financial services" would improperly stretch RICO to reach "situations absurdly remote from the concerns of the statute's framers." *Id*. (quotations and citations omitted).

Plaintiffs' alleged enterprise suffers from the same flaws identified in *Jubelirer*. According to Plaintiffs, the "ACH Enterprise" includes: (1) merchant "Originators," which "initiate entries into the ACH Network," (2) ODFIs, which "originate ACH entries," (3) RDFIs, which "receive ACH entries," (4) customers (including Plaintiffs themselves), which "authorize[] an Originator to initiate a credit or debit entry," (5) ACH Operators, which comprise the "two central clearing facilities . . . that process ACH transactions," and (6) Third-Party Service Providers, which perform functions on behalf of other participants in the ACH network. *Id.* ¶¶ 118-19. It is, in short, much of the nation's financial system.

11

Just as in *Jubelirer*, Plaintiffs' allegations "would lead to the absurd conclusion that each of the many million combinations of [merchant and ODFI, among others] is a RICO enterprise" based solely on "routine contractual" relationships and would stretch RICO to encompass "situations absurdly remote from the concerns of [its] framers." *Jubelirer*, 68 F. Supp. 2d at 1053 (quotations and citations omitted). Such allegations would impermissibly "transfer an entire industry into a RICO enterprise" based on allegations of wrongdoing by a "handful of industry members." *Brokerage Antitrust*, 2007 WL 1062980, at *19. For these reasons alone, Plaintiffs' RICO claims should be dismissed as a matter of law.

**B.    Plaintiffs Fail To Plead That BMO Harris Conducted Or Participated In The Conduct Of The Enterprise's Affairs.**

To state a claim, a plaintiff must allege that the defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs." 18 U.S.C. § 1962(c). The Supreme Court has held that "[i]n order to 'participate, directly or indirectly, in the conduct of [the] enterprise's affairs,' one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993) (quoting 18 U.S.C. § 1962(c)). Moreover, in cases involving debt collection, RICO's plain language requires that the defendant direct the "enterprise's affairs through . . . collection of unlawful debt." 18 U.S.C. § 1962(c). *See also United States v. Dennis*, 458 F. Supp. 197, 199 (E.D. Mo. 1978) ("The mere fact that defendant is employed by the enterprise and collects unlawful debts on the premises of the enterprise, even if against such enterprise's rules and regulations, does not establish that the defendant participated in the conduct of the enterprise's affairs through the collection of the debts.").

Plaintiffs do not allege that BMO Harris directed the "ACH Enterprise's" affairs through the collection of unlawful debt. Instead, Plaintiffs merely allege that BMO Harris "originated entries on the ACH Network at the request of Illegal Online Payday Lenders." Am. Compl.

¶ 124. But it is black-letter law that "simply performing services for an enterprise, even with knowledge of the enterprise's illicit nature, is not enough to subject an individual to RICO liability under § 1962(c); instead, the individual must have participated in the operation and management of the enterprise itself." *Goren v. New Vision Intern., Inc.*, 156 F.3d 721, 728 (7th Cir. 1998); *see also Azirelli v. Cohen Law Offices*, 21 F.3d 512, 521-22 (2d Cir. 1994) (holding that the provision of legal services did not constitute management of a RICO enterprise conducting a fraudulent real estate transaction); *Nastro v. D'Onofrio*, 542 F. Supp. 2d 207, 217 (D. Conn. 2008) (holding that the provision of legal services does not render defendants liable under RICO "even if they had knowledge of the alleged enterprise's illicit nature").

As a result, allegations that a defendant provided payment processing services are insufficient to show that the defendant directed a RICO enterprise. *See, e.g., Walker v. Hallmark Bank & Trust, Ltd.*, 707 F. Supp. 2d 1317, 1321 (S.D. Fla. 2010) (dismissing civil RICO claims that sought to hold MasterCard liable for processing payments that benefitted a Ponzi scheme because the plaintiff "did not allege sufficient facts to show that [MasterCard] participated in the operation or management of the alleged [RICO] enterprise"); *Super Vision Int'l, Inc. v. Mea Int'l Commercial Bank Co.*, 534 F. Supp. 2d 1326, 1338 (S.D. Fla. 2008) (dismissing civil RICO claims against a bank for facilitating a customer's fraudulent transfers, holding that "[b]ankers do not become racketeers by acting like bankers" and finding it "noteworthy that, in this case, [plaintiff] only alleges that [the defendant bank] benefited from its relationship with [its customer] by receiving fees and deposits") (quoting *Terry A. Lambert Plumbing, Inc. v. W. Sec. Bank*, 934 F.2d 976, 981 (8th Cir. 1991)); *Jubelirer*, 68 F. Supp. 2d at 1053 ("[T]he law is clear that merely having a business relationship with and performing services for . . . an enterprise, including financial . . . services, does not support RICO liability.").

13

Plaintiffs' allegations are nearly identical to the allegations found insufficient in *Walker*, *Super Vision,* and *Jubelirer*. According to Plaintiffs, BMO Harris allegedly participated in the purported enterprise by facilitating the collection of unlawful debts through "originating entries on the ACH Network[] at the request of" payday lenders. Am. Compl. ¶ 123. Indeed, just as in *Super Vision*, the only benefit that BMO Harris allegedly received came through "receipt of fees for [its] origination of debit entries on the ACH Network." *Id.* ¶¶ 98, 108.

In an apparent attempt to avoid this shortfall and at least allege that BMO Harris directed *something*, Plaintiffs allege in conclusory fashion that BMO Harris is a "Direct Financial Institution Member[] of NACHA" and therefore can "influence the governance and direction of the ACH Network." Am. Compl. ¶ 39. Plaintiffs also allege that BMO Harris is "eligible" to serve on the NACHA Board of Directors. *Id*. But Plaintiffs do not allege *any* factual matter addressing how BMO Harris actually participated in the governance of NACHA (let alone the broader "ACH Enterprise"). Nor do Plaintiffs attempt to tie this alleged participation in NACHA to the purported wrongdoing at issue —collection of unlawful debt. Indeed, Plaintiffs allege that NACHA has adopted rules to keep illicit transactions out of the ACH network, *id.* ¶ 42, not that BMO Harris has somehow caused NACHA to allow illegal debt collection to infiltrate the ACH network. As a result, Plaintiffs do not plausibly allege that BMO Harris directed the "enterprise's affairs through . . . collection of unlawful debt." 18 U.S.C. § 1962(c). At best, Plaintiffs allege in conclusory fashion that BMO Harris purportedly directed NACHA's affairs on general issues that have nothing to do with the alleged collection of unlawful debt at issue here.

### C.    BMO Harris Is Not In The Business Of Making Usurious Loans And Did Not "Collect" Unlawful Debt.

In *Durante Bros. & Sons v. Flushing Nat'l Bank*, the Second Circuit found that RICO's "collection of unlawful debt" provision applies only if defendants "were in the business of

making usurious loans"; allegations that "the defendants engaged in a scheme, but were not in the business of making usurious loans . . . will not satisfy the statute." 755 F.2d 239, 250 (2d Cir. 1985) (quotations and citations omitted), *cert denied sub nom Durante Bros. & Sons v. Nat'l Bank of New York City*, 473 U.S. 906 (1985); *see also United States v. Persico*, 2011 WL 2433728, at *2 (E.D.N.Y. June 14, 2011) (plaintiff must establish "that each defendant was 'lending money or a thing of value at a rate usurious under State or Federal law'" and "that each defendant was 'in the business' of doing so") (quoting 18 U.S.C. § 1961(6)). As the Second Circuit explained, "[t]he inclusion of 'collection of unlawful debt' as a major predicate for RICO liability seems to have been an explicit recognition of the evils of loan sharking, and there is no indication that Congress was taking aim at legitimate banking institutions." *Durante Bros.*, 755 F.2d at 250. Accordingly, "occasional usurious transactions by one not in the business of loan sharking" are "exclu[ded] from the scope of the [RICO] statute." *Id.*

Plaintiffs' claim fails because they do not allege that BMO Harris was "in the business of making usurious loans." Indeed, Plaintiffs do not allege that BMO Harris itself made payday loans at all. To the contrary, Plaintiffs allege that BMO Harris processed ACH debits for loans made by others. Mere allegations that BMO Harris purportedly "engaged in a scheme" with payday lenders "will not satisfy the statute." *Durante Bros.*, 755 F.2d at 250.

Moreover, to state a claim, Plaintiffs must allege that BMO Harris "*collect*[ed] unlawful debt." 18 U.S.C. § 1962(c) (emphasis added). RICO does not define "collection," but as the Second Circuit has explained, "[o]bviously, the transmission of money *within an organization*, regardless of that organization's legality, does not constitute collection of a debt." *United States v. Giovanelli*, 945 F.2d 479, 490 (2d Cir. 1991) (emphasis added). Consistent with *Giovanelli*, one court of appeals has adopted an analogous definition in the Extortionate Credit Transactions

15

Statute, 18 U.S.C. § 891(5), which defines "[t]o collect an extension of credit" as "to induce in any way any person to make repayment thereof." *United States v. Pepe*, 747 F.2d 632, 674 (11th Cir. 1984) (concluding that this is "a proper definition of the term collection in RICO").

Plaintiffs' complaint is devoid of any allegation that BMO "induced" payment of or otherwise "collect[ed] unlawful debt." Instead, Plaintiffs attempt to rewrite RICO's plain language by alleging that BMO Harris purportedly "*participate*[*s* in the collection of unlawful debt" by engaging in "daily volume batch processing of electronic payments." Am. Compl. ¶¶ 120, 123 (emphasis added). But RICO liability does not extend to any entity that allegedly "participated in the collection of unlawful debt," as Plaintiffs allege. RICO makes it unlawful only to "participate . . . in the conduct of [an] enterprise's affairs *through . . . collection of unlawful debt*." 18 U.S.C. § 1962(c) (emphasis added). The broader liability theory alleged by Plaintiffs also conflicts with the well-established principle discussed in Section II.B above that merely providing routine support services is not enough to give rise to RICO liability.

Notably, although the electronic transactions that are batch processed daily on the ACH network may include the occasional repayment for a usurious loan, at the point when an ACH debit occurs, the repayment has already been "induce[d]" by someone else without any involvement by BMO Harris. As Plaintiffs allege, they authorized the ACH debits at issue, their payday lenders originated the ACH debits on the ACH network, and their banks are the entities that actually took the money from their accounts. Am. Compl. ¶ 40. These entities actually have a direct relationship with Plaintiffs through loan or account agreements, unlike an ODFI, which merely acts as an internal cog *within the ACH network* itself. For this reason too, Plaintiffs have failed to plead a viable civil RICO claim against BMO Harris.

### D. Plaintiffs Have Not Adequately Alleged That BMO Harris Had Knowledge Of The Purportedly Unlawful Conduct.

Plaintiffs also fail to plausibly allege that BMO Harris had knowledge of the purportedly unlawful conduct by MNE Services and Lenders International. A defendant is liable under § 1962(c) "only if it assisted . . . with knowledge of the illegal activities." *Andreo v. Friedlander, Gaines, Cohen, Rosenthal & Rosenberg*, 660 F. Supp. 1362, 1370 (D. Conn. 1987). "Mere reckless disregard of the truth . . . does not justify a finding of RICO civil liability on the basis that the party participated in the illegal enterprise." *Id*.

Although Plaintiffs filed this case as a putative class action, they still must state a plausible claim in their own right. *See, e.g., O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class"). But Plaintiffs do not plead *any* factual matter addressing what BMO Harris purportedly knew about MNE Services or Lenders International, their particular loans, or the few ACH debits that they allege were unlawful. Plaintiffs do not even specify if BMO Harris had a direct Origination Agreement or other contact with their lenders, as opposed to processing the authorizations through a Third-Party Sender (which would make any purportedly illicit transactions even more difficult to detect because the Third-Party Sender might pass along authorizations as part of a larger pool from various merchant Originators). Without any such knowledge allegations, Plaintiffs do not state a plausible claim against BMO Harris.[5]

Instead of addressing the facts of their individual cases, Plaintiffs make a series of generic allegations involving "Illegal Online Payday Lenders." For example, Plaintiffs allege that BMO Harris purportedly "knew the [lenders] were engaged in the business of making

---

[5] Similarly, Plaintiffs do not plead any factual matter addressing the purported conspiracy between BMO Harris and both MNE Services and Lenders International.

17

payday loans in states where payday lending was unlawful." Am. Compl. ¶ 77; *see also* ¶¶ 124-26 (substantively similar). This conclusory assertion is insufficient. *See, e.g., Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Luvdarts, LLC v. A T & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (relying on *Iqbal* to conclude that the plaintiff's "conclusory allegations that the [defendant] had the required knowledge of infringement are plainly insufficient").

Plaintiffs also allege that ACH debits on behalf of payday lenders raise "red flags" alerting ODFIs to "potential" unlawful activity. Am. Compl. ¶ 82. The only purported "red flag" identified by Plaintiffs is the alleged "high return rate[] on ACH debit transactions." *Id.* ¶¶ 83-84. But as Plaintiffs concede, returns happen for "numerous reasons." *Id.* ¶ 83. An ACH transaction merely records the movement of money between accounts (*see id.* ¶¶ 35-37, 40-41); it does not identify the terms of the underlying transaction or the parties' state of residence. And as discussed above, if a Third-Party Sender is involved, the "return rate" for a particular merchant may be undecipherable. (Notably, the complaint is silent about MNE Services' or Lenders International's "return rate" and whether BMO Harris purportedly knew about it.)

Plaintiffs' allegations that BMO Harris should have known that their particular transactions were unlawful does not sufficiently plead that BMO Harris had "knowledge of the [alleged] illegal activities," which is required to sustain a civil RICO claim. *Andreo*, 660 F. Supp. at 1370. As a result, Plaintiffs' civil RICO claims should be dismissed.

III.    **Plaintiffs Fail To State Plausible Claims Under New York Law.**

      A.    **Plaintiffs Fail To State A Claim For Aiding And Abetting Their Lenders' Purported Violations Of New York's Civil Usury Statute.**

Plaintiffs fail to state a claim for aiding and abetting violations of New York's civil usury statute, *see* Am. Compl. Count VIII, because they have not plausibly alleged that BMO Harris *knowingly* aided and abetted violations by MNE Services and Lenders International.

Although New York courts have yet to formally recognize a claim for aiding and abetting usury violations,[6] in addressing aiding and abetting liability generally, New York law requires *actual knowledge* of the primary violation. *See, e.g., Silverman Partners, LP v. First Bank*, 687 F. Supp. 2d 269, 286 (E.D.N.Y. 2010) (collecting cases). To survive a motion to dismiss, aiding and abetting claims "must be pled with some level of specificity and may not consist solely of a broad, conclusory, repetition of the elements of aiding and abetting." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 174 (S.D.N.Y. 2009). "'The burden of demonstrating actual knowledge, although not insurmountable, is nevertheless a heavy one,'" and requires "allegations of facts that give rise to a 'strong inference' of actual knowledge." *Fraternity Fund v. Beacon Hill Asset Mgmt*, 479 F. Supp. 2d 349, 367 (S.D.N.Y. 2007) (citations omitted); *see also 3801 Beach Channel v. Shvartzman*, 2011 WL 1303812, at *3 (E.D.N.Y. Mar. 31, 2011). A plaintiff must allege more than knowledge of "red flags." *Silverman Partners,* 687 F. Supp. 2d at 285-86. Moreover, a plaintiff "must offer facts sufficient to demonstrate that the defendant[] had actual knowledge of wrongful conduct *that harmed the [specific group of]*

---

[6] Liability for aiding and abetting is not be presumed when it is not provided for in the statute, as it is not here. *See, e.g., Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994) (holding that parties cannot be liable for aiding and abetting a violation of section 10(b) of the Securities Exchange Act because the statute does not provide for such liability, stating that there "is no general presumption" of aiding and abetting liability); *cf. Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris USA Inc.,* 818 N.E.2d 1140, 1144 (N.Y. 2004) ("But we will not presume an intent to include recovery for derivative injuries within the scope of the statute in the absence of a clear indication of such intent from the Legislature.").

customers . . . not actual knowledge of different wrongful conduct that might have harmed others." *Kirschner v. Bennett*, 648 F. Supp. 2d 525, 545 (S.D.N.Y. 2009).

As discussed in Section II.D above, Plaintiffs do not allege facts giving rise to a "strong inference" that BMO Harris had actual knowledge of the purportedly unlawful conduct by MNE Services or Lenders International. Indeed, Plaintiffs do not plead *any* facts that demonstrate what BMO Harris purportedly knew about MNE Services or Lenders International or the few debits to their accounts they contend were unlawful. The complaint contains only industry-wide allegations about "Illegal Online Payday Lenders" generally, and as discussed above, even those allegations are wholly conclusory. As a result, Plaintiffs fail to state a plausible claim that BMO Harris knowingly aided and abetted their lenders' violations of New York usury laws.

**B.      Plaintiffs Fail To State A Claim For Assumpsit.**

In their assumpsit claim, Plaintiffs seek to recover from BMO Harris the entire amount of the funds debited from their accounts and the accounts of putative class members. *See* Am. Compl. Count VII. Plaintiffs' assumpsit claim fails because they have not pled any facts to suggest that BMO Harris retained and benefitted from retaining the funds.

To plead a claim for assumpsit, also called "money had and received," a plaintiff must allege that: "(1) [the] defendant received money belonging to the plaintiff; (2) [the] defendant benefitted from the receipt of the money; and (3) under principles of equity and good conscience, [the] defendant should not be permitted to keep the money." *Excalibur Sys., Inc. v. Aerotech World Trade, Ltd.*, 1999 WL 1281496, at *2 (E.D.N.Y. Dec. 30, 1999). The New York Court of Appeals has held that "the essential inquiry" in an assumpsit action is "whether it is against equity and good conscience to permit the defendant *to retain what is sought to be recovered*." *Sperry v. Crompton Corp.*, 863 N.E.2d 1012, 1018 (N.Y. 2007) (emphasis added).

Plaintiffs do not allege that BMO Harris ever meaningfully retained the funds that were debited from their accounts on behalf of their lenders, let alone benefited from those funds. To the contrary, the gravamen of Plaintiffs' complaint is that as an ODFI in the ACH network, BMO Harris helps transmit ACH debits and collects a transaction fee for its services. Am. Compl. ¶ 98, 108. As a result, "equity and good conscience" cannot compel BMO Harris to return to Plaintiffs funds that it never retained, used, or spent in the first place. That would be a windfall to Plaintiffs. Accordingly, Plaintiffs' assumpsit claim fails.[7]

## C. Plaintiffs Fail To State A Claim For Unjust Enrichment.

Unlike assumpsit, Plaintiffs limit their unjust enrichment claim to the transaction fees that BMO Harris received for processing ACH debits. Am. Compl. ¶¶ 186-87. Plaintiffs allege that BMO Harris purportedly "received and retained wrongful benefits from Plaintiffs and the Class in the form of such transaction fees." *Id.* ¶ 187. Plaintiffs' unjust enrichment claim fails for two reasons. First, Plaintiffs have not alleged that they or any other borrower paid the transaction fees at issue. Second, Plaintiffs have not alleged any "actual, substantive relationship" with BMO Harris, as required to state a claim for unjust enrichment under New York law.

To plead a claim for unjust enrichment, a plaintiff must allege that "(1) the other party was enriched, (2) at that party's expense, and (3) that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1110 (N.Y. 2011) (emphasis added). Moreover, "[i]t is not sufficient for defendant to receive some indirect benefit—the benefit received must be specific

---

[7] Assumpsit claims are also based on the same principles as unjust enrichment. *See, e.g., T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, 2010 WL 4038826, at *4 (E.D.N.Y. Oct. 14, 2010). Accordingly, the unjust enrichment requirements discussed below—a direct benefit and an actual, substantive relationship between the parties—also apply to and further require dismissal of Plaintiffs' assumpsit claim. *See, e.g., Sperry*, 863 N.E.2d at 1018 (holding that to support an assumpsit claim, the "connection between [the parties must not be] too attenuated").

21

and direct." *M+J Savitt, Inc. v. Savitt*, 2009 WL 691278, at \*10 (S.D.N.Y. Mar. 17, 2009) (quotations and citation omitted); *see also Brenner v. Brenner*, 821 F. Supp. 2d 533, 540-41 (E.D.N.Y. 2011) (dismissing unjust enrichment claim because defendant did not directly benefit from plaintiffs having paid off a loan made to defendant's son's company).

Plaintiffs fail to allege that they provided BMO Harris with a specific, direct benefit. Although Plaintiffs allege that BMO Harris received benefits "from Plaintiffs and the Class," Am. Compl. ¶ 187, Plaintiffs do not allege that they actually paid BMO Harris's transaction fees. This omission is critical. If the transaction fees at issue were paid by someone else in the ACH network (e.g., the merchant), any benefit conferred by Plaintiffs is, at best, indirect and not enough to support a claim for unjust enrichment under New York law.

Plaintiffs' unjust enrichment claim also fails for the second, independently dispositive reason that Plaintiffs do not allege that they had any "actual, substantive relationship" with BMO Harris. *See, e.g., Carmona v. Spanish Broad. Sys., Inc.*, 2009 WL 890054, at \*6 (S.D.N.Y. Mar. 30, 2009) (dismissing unjust enrichment claim because plaintiff lacked "direct dealings, or an actual, substantive relationship" with defendant); *Georgia Malone & Co. v. Rieder*, 973 N.E.2d 743, 747 (N.Y. 2012) (finding no unjust enrichment because parties "simply had no dealings with each other" and complaint did not allege that parties "had any contact regarding the purchase transaction"). According to Plaintiffs' own allegations, Plaintiffs did not have any actual, substantive relationship with BMO Harris. To the contrary, Plaintiffs allege that BMO Harris was a middleman chosen by their lenders to process ACH debits. Am. Compl. ¶¶ 6-7. Accordingly, Plaintiffs fail to state an unjust enrichment claim against BMO Harris.

## D.    Plaintiffs Fail To State A Claim Under New York GBL § 349.

To state a claim under New York GBL § 349, which governs deceptive acts and practices, a plaintiff must allege that "(1) the defendant's deceptive acts were directed at

consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citing *Oswego Laborer's Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744-45 (N.Y. 1995)). In *Oswego*, the New York Court of Appeals limited the definition of "deceptive acts and practices" to "representations or omissions . . . likely to mislead a reasonable consumer acting reasonably under the circumstances." 647 N.E.2d at 744-45; s*ee also Marini v. Adamo*, 812 F. Supp. 2d 243, 272 (E.D.N.Y. 2011) (Bianco, J.) (dismissing GBL § 349 claim where "plaintiffs have not put forth any evidence that defendants maintained a website, circulated marketing materials, or made other efforts to make misrepresentations. . . .").

Plaintiffs' GBL § 349 claim fails because they have not alleged that BMO Harris engaged in any representations (or omissions) likely to mislead a reasonable consumer acting reasonably under the circumstances or that they suffered any resulting injury. Plaintiffs do not allege that any of the terms of their loans were not fully disclosed; indeed, Plaintiffs concede that they authorized the ACH debits at issue. Am Compl. ¶¶ 90, 99, 104. This alone is fatal to their claim. *See, e.g., Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 586 (N.Y. App. Div. 2010) ("Certainly, if the terms and conditions . . . were fully disclosed to any given customer prior to his or her purchase, it could not be said that any such customer suffered an injury as a result of the alleged deceptive practice."). Moreover, as discussed in Section III.C above, Plaintiffs did not have an actual relationship or other interaction with BMO Harris. As a result, BMO Harris could not have directed any representations to Plaintiffs or other borrowers. Accordingly, Plaintiffs fail to state a plausible claim that BMO Harris violated GBL § 349.

## CONCLUSION

For all of the foregoing reasons, the complaint against BMO Harris (Dkt. 38) should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6)-(7) and 19.

Dated: February 3, 2014                                    MAYER BROWN LLP

                                                           _/s/Therese Craparo_____
                                                           Therese Craparo
                                                           1675 Broadway
                                                           New York, New York 10019-5820
                                                           (212) 506-2500 (Telephone)
                                                           (212) 262-1910 (Facsimile)
                                                           tcraparo@mayerbrown.com

                                                           Lucia Nale (pro hac vice)
                                                           Debra Bogo-Ernst (pro hac vice)
                                                           Matthew Sostrin (pro hac vice)
                                                           71 South Wacker Drive
                                                           Chicago, IL 60606
                                                           (312) 782-0600 (Telephone)
                                                           (312) 701-7711 (Facsimile)
                                                           lnale@mayerbrown.com
                                                           dernst@mayerbrown.com
                                                           msostrin@mayerbrown.com

                                                           Kevin S. Ranlett (pro hac vice)
                                                           1999 K Street, N.W.
                                                           Washington, D.C. 20006-1101
                                                           (202) 263-3000 (Telephone)
                                                           (202) 263-3300 (Facsimile)
                                                           kranlett@mayerbrown.com

                                                           *Attorneys for BMO Harris Bank N.A.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on 3rd Day of February, 2014, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service through filing by the ECF system, which will send notification of the filing to the attorneys on that system.

*/s/Therese Craparo*
Therese Craparo