## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEBORAH MOSS, and WILLIAM HILLICK on Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>BMO HARRIS BANK, N.A., FIRST PREMIER BANK, a South Dakota State-Chartered Bank, and BAY CITIES BANK, a Florida State-Chartered Bank<br><br>    Defendants. | **CASE NO. 2:13-CV-05438-JFB-GRB** |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF DEBORAH MOSS'S MOTION TO PARTIALLY VACATE THE STAY OF HER ACTION AS AGAINST DEFENDANTS FIRST PREMIER BANK AND BAY CITIES BANK**

## TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................1

III.  LEGAL STANDARD............................................................................................4

IV.   ARGUMENT .........................................................................................................5

      A.    The SFS Loan Agreements Require Arbitration Before An Unavailable Forum. ....5

      B.    The Arbitration Provision Designating NAF as the Arbitral Forum is Integral to the SFS Loan Agreements. ..................................................................................6

      C.    SFS's Continued Failure to Designate a Substitute Arbitral Forum for A Year After its Chosen Arbitrator Became Unavailable Indicates SWB Intended NAF Exclusively to Perform Arbitrations. ..................................................................14

V.    CONCLUSION....................................................................................................17

ii

# TABLE OF AUTHORITIES

## Cases

*Adler v. Dell, Inc.*,
No. 08-cv-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009) ........................... 13

*Apex 1 Processing, Inc. v. Edwards*,
962 N.E.2d 663 (Ind. Ct. App. 2012)........................................................................ 11

*Brown v. ITT Consumer Fin. Corp.*,
211 F.3d 1217 (11th Cir. 2000) ....................................................................... 6, 13

*Carideo v. Dell, Inc.*,
No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009)................................. 10, 11

*Carr v. Gateway, Inc.*,
944 N.E.2d 327 (Ill. 2011) ....................................................................... 11, 16, 17

*Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*,
14 So. 3d 695 (Miss. 2009) ....................................................................... 12

*Crewe v. Rich Dad Educ., LLC*,
884 F. Supp. 2d 60 (S.D.N.Y. 2012)........................................................................ 13

*De Malmanche v. Glenrock Asset Mgmt. Associates, L.P.*,
No. 07CIV10940KNF, 2010 WL 2541495 (S.D.N.Y. June 22, 2010)...................................... 8

*Dover Ltd. v. A.B. Watley, Inc.*,
No. 04 CIV. 7366 (FM), 2006 WL 2987054 (S.D.N.Y. Oct. 18, 2006)................................. 7

*Geneva–Roth, Capital, Inc. v. Edwards*,
956 N.E.2d 1195 (Ind. Ct. App. 2011) ....................................................................... 11

*GGNSC Tylertown, LLC v. Dillon*,
87 So. 3d 1063 (Miss. Ct. App. 2011) ....................................................................... 12

*Grant v. Magnolia Manor–Greenwood, Inc.*,
678 S.E.2d 435 (S.C. 2009) ....................................................................... 12

*In re Salomon S'holders' Derivative Litig.*,
68 F.3d 554 (2d Cir. 1995)....................................................................... 7, 12

*Inetianbor v. CashCall, Inc.*,
768 F.3d 1346 (11th Cir. 2014) ....................................................................... 10, 12

*Inetianbor v. CashCall, Inc.*,
No. 13-60066-CIV, 2013 WL 1325327 (S.D. Fla. Apr. 1, 2013)................................. 5

*Khan v. Dell Inc.*,
669 F.3d 350 (3rd Cir. 2012) ....................................................................... 13, 14

*Khan v. Dell, Inc.,*
   No. 09–3703, 2010 WL 3283529 (D.N.J. Aug. 18, 2010)...................................................... 11

*Klima v. Evangelical Lutheran Good Samaritan Soc.,*
   No. 10-CV-1390-JAR-JPO, 2011 WL 5412216 (D. Kan. Nov. 8, 2011)............................ 9, 11

*Licata v. GGNSC Malden Dexter LLC,*
   No. SUCV2011-02815-A, 2012 WL 1414881 (Mass. Super. Ct. 2012) ................................ 12

*Miller v. GGNSC Atlanta, LLC,*
   746 S.E.2d 680 (Ga. Ct. App. 2013) ........................................................................................ 11

*Paine Webber, Inc. v. Rutherford,*
   903 F.2d 106 (2d Cir. 1990)........................................................................................................ 7

*Ranzy v. Extra Cash of Texas, Inc.,*
   No. H-09-3334, 2010 WL 936471 (S.D. Tex. Mar. 11, 2010), .......................................... 8, 11

*Ranzy v. Tijerina*, 393 F. App'x 174 (5th Cir. 2010) ........................................................... 8, 9, 11

*Riley v. Extendicare Health Facilities,*
   826 N.W.2d 398 (Wis. Ct. App. 2012) ..................................................................................... 11

*Rivera v. Am. Gen. Fin. Servs., Inc.,*
   259 P.3d 803 (N.M. 2011) ........................................................................................................ 11

*Stewart v. GGNSC-Canonsburg, L.P.,*
   9 A.3d 215 (Pa. Super. Ct. 2010) ............................................................................................. 12

*Sunbridge Ret. Care Assocs. LLC v. Smith,*
   757 S.E.2d 157 (Ga. Ct. App. 2014) ........................................................................................ 11

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,*
   489 U.S. 468 (1989).................................................................................................................... 4

## <u>Statutes</u>

9 U.S.C. § 3 ............................................................................................................................. 1, 3, 5

9 U.S.C. § 5 ..................................................................................................................... 6, 8, 16, 17

9 U.S.C. Sections 1-16 ................................................................................................................... 3

New York Banking Law § 14-a, subd. 2 ........................................................................................ 2

NY GBL § 349 ................................................................................................................................ 2

NY GOL § 5-501 ............................................................................................................................ 2

## I.   <u>INTRODUCTION</u>

In accordance with this Court's order staying the action and compelling arbitration of her claims against Defendants First Premier Bank ("First Premier") and Bay Cities Bank ("Bay Cities"), Plaintiff Deborah Moss ("Moss") sought to initiate arbitration proceedings against First Premier and Bay Cities in accordance with the terms set forth in her payday loan agreements. Plaintiff Moss has now been informed by the arbitral forum named in that agreement—the National Arbitration Forum—that it will not accept her arbitration because it no longer performs arbitrations involving consumers, pursuant to a 2009 consent judgment reached after allegations of profound anti-consumer bias.   Because the arbitral forum designated in her payday loan agreements is unavailable—and indeed, had been unavailable for more than a year before the payday loan agreements at issue in this case were entered into—Moss now moves to partially vacate the stay of her case so that she may proceed against First Premier and Bay Cities in this Court.

The Second Circuit and federal Courts of Appeal around the country hold that where an arbitration provision states expressly that an arbitration must exclusively be performed by a specified arbitrator, that designation is "integral" to the contract.  As such, a court may not re-write the contact to name its own preferred arbitrator, and arbitration may not be compelled where a contractually designated arbitral forum is or becomes unavailable.  For the reasons discussed below, the Court should reach the same result here.  Accordingly, this Court should partially vacate the stay it entered pursuant to 9 U.S.C. § 3 and allow Moss to pursue her claims against First Premier and Bay Cities in the Eastern District of New York.

## II.   <u>BACKGROUND</u>

On September 30, 2013, Moss filed a Class Action Complaint against BMO Harris Bank,

N.A. ("BMO"), First Premier, and Bay Cities (collectively "Defendants")  seeking to hold them liable for their conduct in entering into agreements with illegal online payday lenders to allow them direct access to borrowers' bank accounts in states where such loans are illegal.  (Doc. 1).  On January 3, 2014, Moss filed her First Amended Class Action Complaint ("FAC"), which added Plaintiff William Hillick to the Class Action Complaint.   (Doc. 38).   The FAC alleges that Defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), aided and abetted violations of the New York civil usury law (NY GOL § 5-501 and New York Banking Law § 14-a, subd. 2), and violated New York's General Business Law, which makes it unlawful to engage in any deceptive acts or practices in the conduct of any business, trade, or commerce within the state (NY GBL § 349).  The FAC seeks further recovery under the common-law doctrine of assumpsit and also seeks injunctive relief.  *Id.*

On or about October 14, 2010 and June 17, 2010, respectively, Moss entered into two payday loan agreements with the illicit online payday lender SFS, Inc. d/b/a OneClickCash ("SFS Loan Agreements"), each with disclosed interest rates exceeding 900% (Doc. 51-1, p. 20; Doc. 54-1, p. 20).  The FAC alleges that in order to compel repayment of these unlawful loans, SFS, Inc. ("SFS") needed access to borrowers' bank accounts so that it could directly debit payments, fees, and penalty charges.  First Premier and Bay Cities agreed to provide this access by serving as Originating Depository Financial Institutions ("ODFIs") for SFS on the mainstream electronic payments network known as the "ACH Network."

Although First Premier and Bay Cities were not parties to the SFS Loan Agreements between Moss and SFS—and Moss was unaware of First Premier and Bay Cities or their roles in the process at the time she entered into the SFS Loan Agreements—First Premier and Bay Cities moved to enforce the arbitration provisions contained in the SFS Loan Agreements under the

doctrine of equitable estoppel. (*See* Doc. 50; Doc. 53). After the issue was fully briefed, and argued, this Court entered an order on June 9, 2014 granting First Premier's and Bay Cities' motions to compel arbitration (along with a similar motion by BMO). The Court compelled Moss to arbitrate against all Defendants and stayed the case pursuant to 9 U.S.C § 3. (*See* Doc. 91).

The SFS Loan Agreements each contain two arbitration provisions, one in the "Application" section of the agreements and another in the "Loan Note and Disclosure" section of the agreements. The arbitration agreements are each substantially similar and provide:

> **ARBITRATION OF ALL DISPUTES**: You and we agree that any and all claims, disputes or controversies between you and us, any claim by either of us against the other (or the employees, officers, directors, agents, servicers or assigns of the other) and any claim arising from or relating to your application for this micro-business loan ("Loan"), regarding this Loan or any other Loan you previously or may later obtain from us, this Note, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in class actions, regarding collection of the Loan, alleging fraud or misrepresentation, whether under common law or pursuant to federal, state or local statute, regulation or ordinance, including disputes regarding the matters subject to arbitration, or otherwise, shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. No class arbitration. All disputes including any Representative Claims against us and/or related third parties shall be resolved by binding arbitration only on an individual basis with you. THEREFORE, THE ARBITRATOR SHALL NOT CONDUCT CLASS ARBITRATION; THAT IS, THE ARBITRATOR SHALL NOT ALLOW YOU TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY FOR OTHERS IN THE ARBITRATION. This agreement to arbitrate all disputes shall apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405." Your arbitration fees will be waived by the NAF in the event you cannot afford to pay them. The cost of any participatory, documentary or telephone hearing, if one is held at your or our request, will be paid for solely by us as provided in the NAF Rules and, if a participatory hearing is requested, it will take place at a location near your residence. This arbitration agreement is made pursuant to a transaction involving interstate commerce. It shall be governed by the Federal Arbitration Act, 9 U.S.C. Sections 1-16. Judgment upon the award may be entered by any party in any court having jurisdiction.

Doc. 51-1, pp. 18, 20; Doc. 54-1, pp. 18, 20.

3

On January 23, 2015, Moss's counsel sent a letter to the National Arbitration Forum ("NAF") attempting to initiate arbitration in accordance with the NAF Code of Procedure ("NAF Code") and the terms of the SFS Loan Agreements.  The letter cited the pertinent portions of the SFS Loan Agreements and enclosed copies of (1) Plaintiff's FAC, (2) this Court's June 9, 2014 order compelling arbitration, and (3) an affidavit from Plaintiff's counsel Darren T. Kaplan verifying the allegations in the FAC.  *See* Ex. A to Plaintiff's Motion to Partially Vacate the Stay.

On January 28, 2015, Moss's counsel received a response letter from the NAF declining to initiate arbitration.  The NAF stated:

> We are in receipt of your enclosed correspondence.
>
> Please be advised that we are no longer able to accept arbitration claims involving consumers pursuant to a Consent Judgment entered in Hennepin County District Court in July 2009 between the Minnesota Attorney General and the National Arbitration Forum.
>
> In view of the above, your correspondence is being returned to you and no file has been opened regarding this matter.

*See* Ex. B to Plaintiff's Motion to Partially Vacate the Stay.

## III.   LEGAL STANDARD

Although the Federal Arbitration Act ("FAA") was designed "to overrule the judiciary's long-standing refusal to enforce agreements to arbitrate," it "does not require parties to arbitrate when they have not agreed to do so." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.,* 489 U.S. 468, 478 (1989) (citations omitted).  The FAA "simply requires courts to enforce private negotiated agreements to arbitrate, like other contracts, in accordance to their terms."  *Id.* When an integral provision in an arbitration agreement cannot be enforced pursuant to its terms, the FAA "does not apply" and "the unavailability of the designated arbitrator will void the arbitration agreement."  *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2013 WL 1325327, at

*4 (S.D. Fla. Apr. 1, 2013) (granting motion to reopen for lack of an available arbitral forum).

Section 3 of the Federal Arbitration Act provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

Because the arbitral forum designated in the SFS Loan Agreements is unavailable, the issues involved in Moss's suit against First Premier and Bay Cities are no longer "referable to arbitration" and this Court should partially vacate the stay of proceedings it entered on June 9, 2014 and permit Moss to litigate her case against First Premier and Bay Cities in this Court.

## IV.   ARGUMENT

### A.  The SFS Loan Agreements Require Arbitration Before An Unavailable Forum.

The SFS Loan Agreements unambiguously require arbitration to take place before the NAF.  Indeed, the SFS Loan Agreements provide that "all claims, disputes or controversies . . . *shall be resolved* by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed" and that "all claims *shall be filed* at any NAF office, on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at 'National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405.'"  Doc. 51-1, pp. 18, 20; Doc. 54-1, pp. 18, 20.  That forum is not available to Moss.  The NAF rejected Moss's request to initiate an arbitration proceeding against First Premier and Bay Cities because it is "no longer able to accept arbitration claims involving consumers pursuant to a Consent Judgment entered in Hennepin County District Court in July 2009 between the Minnesota Attorney General and the National Arbitration Forum."

Rule 1(A) of the NAF Code provides:

> Parties who contract for or agree to arbitration provided by the Forum or this Code of Procedure agree that this Code governs their arbitration proceedings, unless the Parties agree to other procedures.  **This Code shall be deemed incorporated by reference in every Arbitration Agreement, which refers to the National Arbitration Forum**, the International Arbitration Forum, the Arbitration Forum, adrforum.com, Forum or this Code of Procedure, unless the Parties agree otherwise. **This Code shall be administered only by the National Arbitration Forum** or by any entity or individual providing administrative services by agreement with the National Arbitration Forum.[1]

The NAF Code, adopted by the SFS Loan Agreements, makes clear that the NAF Code can only be administered by the NAF or by an entity that reached an agreement with the NAF to administer arbitration proceedings under the NAF Code.  Likewise, because the SFS Loan Agreements reference the NAF, the NAF Code is deemed incorporated into those agreements.

**B.  The Arbitration Provision Designating NAF as the Arbitral Forum is Integral to the SFS Loan Agreements.**

Where the parties' chosen arbitral forum has failed or is otherwise unavailable, Section 5 of the FAA may apply, in some circumstances, to allow the appointment of a substitute arbitrator. *See* 9 U.S.C. § 5 (noting that if there is a "lapse in the naming of an arbitrator" then "upon the application of either party to the controversy the court shall designate and appoint an arbitrator"). Section 5 does not, however, permit the appointment of a substitute arbitrator where the choice of an arbitral forum "is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern."  *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000) (citations and internal quotations omitted).

In considering whether the designation of an arbitral forum is "integral" to the arbitration

---

[1]   NAF Code of Procedure, Rule 1(A) (emphasis added), *available at*: http://www.adrforum.com/users/naf/resources/CodeofProcedure2008-print2.pdf (last accessed Feb. 10, 2015).

agreement, the most important factor is whether the selected forum was intended to be exclusive. *See, e.g., In re Salomon S'holders' Derivative Litig.*, 68 F.3d 554, 560-61 (2d Cir. 1995) (noting that Section 5 of the FAA does not permit courts to "circumvent the parties' designation of an exclusive arbitral forum.").   Second Circuit law is clear that where an exclusive arbitrator is unavailable, no substitute should be named.

In *In re Salomon*, several ex-officials of Salomon Brothers had signed agreements which stated that any disagreements between them and their employer would be decided in accordance with the rules of the New York Stock Exchange ("NYSE").  68 F.3d at 558.  The NYSE declined to decide the controversy.  *Id.* at 556.  The defendants then sought to compel the plaintiffs to proceed in a *different* forum, but the Second Circuit found that the language of the agreements established that the parties had not agreed to proceed elsewhere in the event that the named organization's facilities were unavailable.  *Id.* at 561.   Similarly, in *Paine Webber, Inc. v. Rutherford,* 903 F.2d 106, 107-09 (2d Cir. 1990), the parties' agreement called for the arbitration to be conducted in accordance with the rules of one of a handful of specifically-named self-regulatory organizations.  The Second Circuit concluded that this language required that any arbitration be held before one of the named entities, rather than another arbitral forum, such as the American Arbitration Association.

Other courts in the Second Circuit agree.  *See, e.g., Dover Ltd. v. A.B. Watley, Inc.,* No. 04 CIV. 7366 (FM), 2006 WL 2987054, at *7 (S.D.N.Y. Oct. 18, 2006) ("as the Second Circuit's decisions in *Paine Webber* and *In re Salomon* establish, the NASD was the exclusive arbitral forum in which the parties' dispute could be heard.  [The] NASD ceased to be a viable forum, unless the Plaintiffs agreed to continue the proceeding there, which they did not.  For these reasons, the [defendants] cannot invoke Section 5 to override the parties' contractual intent and require the

Plaintiffs to arbitrate elsewhere.); *De Malmanche v. Glenrock Asset Mgmt. Associates, L.P.,* No. 07CIV10940KNF, 2010 WL 2541495, at *4 (S.D.N.Y. June 22, 2010) ("Since the arbiter designated by the parties, in the Agreement, maintains it is without the ability to assist them, in resolving their dispute, the plaintiff is free to pursue her claims in this court.").

Courts elsewhere interpreting arbitration agreements nearly identical to those contained in the SFS Loan Agreements have found that arbitral forum designations are integral to that agreement.  For example, in *Ranzy v. Extra Cash of Texas, Inc.*, No. H-09-3334, 2010 WL 936471 (S.D. Tex. Mar. 11, 2010), *aff'd sub nom. Ranzy v. Tijerina*, 393 F. App'x 174 (5th Cir. 2010), the District Court for the Southern District of Texas and then Fifth Circuit Court of Appeals analyzed a payday loan agreement containing an identical arbitration provision:

> You and we agree that any and all claims, disputes, or controversies between you and us and/or the lender . . . shall be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed . . . .  Rules and forms of the NAF may be obtained and all claims shall be filed at any NAF office, or on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405-0191." Your arbitration fees may be waived by the NAF in the event you cannot afford to pay them.

*Ranzy*, 2010 WL 936471, at *1.

The plaintiff argued that arbitration could not be compelled because the arbitration provision specifically named the NAF as the arbitration forum, but the NAF no longer arbitrated consumer disputes.  *Id.* at *3.  The district court examined whether the NAF, as the designated arbitral forum, was an integral part of the arbitration provision, and observed that "the plain language of the arbitration provision in both the Note and the Arbitration Agreement explicitly states that all disputes '*shall be resolved  . . . by and under* the Code of Procedure of the [NAF]'" and that "'all claims *shall be filed* at any NAF office,' or on the NAF web site.' . . . [t]his is

mandatory, not permissive language and evinces a specific intent of the parties to arbitrate before

the NAF." *Id.* (emphasis in original).

On appeal, the Fifth Circuit unanimously affirmed the district court's "very well-reasoned

decision." *Ranzy*, 393 F. App'x at 175.  Relying on the Second Circuit's analysis in *In re Salomon*,

the Fifth Circuit agreed that the agreement's use of the term "shall" indicated the parties' intent to

designate the NAF as the exclusive arbitral forum:

> Here, the arbitration agreement plainly states that Ranzy "shall" submit all claims
> to the NAF for arbitration and that the procedural rules of the NAF "shall" govern
> the arbitration.  Put differently, the parties explicitly agreed that the NAF shall be
> the exclusive forum for arbitrating disputes . . . .  Thus, a federal court need not
> compel arbitration in a substitute forum if the designated forum becomes
> unavailable.

*Ranzy*, 393 F. App'x at 176.

Federal courts interpreting similar agreements have reached the same conclusion. In *Klima*

*v. Evangelical Lutheran Good Samaritan Soc.*, No. 10-CV-1390-JAR-JPO, 2011 WL 5412216 (D.

Kan. Nov. 8, 2011), the District Court for the District of Kansas considered a substantially similar

agreement and held:

> Defendant's form arbitration agreement names the NAF specifically and
> exclusively throughout the agreement. The agreement, for example, states: "Any
> arbitration . . . shall be conducted . . . in accordance with the National Arbitration
> Forum ("NAF") Code of Procedure for Arbitration." The agreement further states
> that "any person requesting arbitration will be required to pay a filing fee to
> NAF...." The agreement also provides the NAF's full contact information for any
> party that would like more information on how the arbitration would be conducted:
> "If you would like information regarding NAF's arbitration services and its rules
> and procedures for arbitration, you may contact NAF . . . ." Finally, the agreement
> makes no provision for selecting any other arbitrator besides the NAF.  Taken
> together, these provisions show that the parties intended to select the NAF as the
> exclusive arbitrator.

*Id.* at *6.

In *Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26,

2009), the District Court for the Western District of Washington also considered a substantially similar agreement and held that "the court concludes that the selection of NAF is integral to the arbitration clause.  The unavailability of NAF as arbitrator presents compounding problems that threaten to eviscerate the core of the parties' agreement.  To appoint a substitute arbitrator would constitute a wholesale revision of the arbitration clause."  *Id*. at *6.

The same rationale applies here.  As in these cases, the SFS Loan Agreements use the word "shall" and evince an undeniable intent to adopt the NAF as the exclusive arbitral forum.  In two separate places in the SFS Loan Agreements—once in the loan "Application" section (Doc. 51-1, p. 18; Doc. 54-1, p. 18), and once again in the "Loan Note and Disclosure" section (Doc. 51-1, p. 20; Doc. 54-1, p. 20)—there are clauses designating the NAF as the exclusive arbitral forum.  These provisions provide:

- All claims, disputes or controversies . . . ***shall be resolved*** by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed;

- Rules and forms of the NAF may be obtained and all claims ***shall be filed*** at any NAF office, on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405";

- Your arbitration fees will be waived by the NAF in the event you cannot afford to pay them;

- The cost of any participatory, documentary or telephone hearing, if one is held at your or our request, will be paid for solely by us as provided in the NAF Rules.

These clauses, drafted by SFS, mention the NAF a combined 10 times each—a strong indication that the designation of the NAF was intended to be a central part of the agreement to arbitrate.  *See, e.g., Inetianbor v. CashCall, Inc*., 768 F.3d 1346, 1351 (11th Cir. 2014) ("That the designation of the particular forum pervades the arbitration agreement is strong evidence that at least [defendant], which drafted the contract . . . considered [the] arbitration [forum designated in the agreement] to be an integral aspect of the arbitration agreement.").

10

In addition to the federal district courts in Kansas,[2] Texas,[3] Washington,[4] and New Jersey,[5] and the Court of Appeals for the Fifth Circuit,[6] state courts across the country have found arbitration agreements containing similar language unenforceable.  Indeed, the state Supreme Courts of New Mexico,[7] and Illinois,[8] and intermediate appellate courts in Wisconsin,[9] Georgia,[10]

---

[2] *Klima*, 2011 WL 5412216.

[3] *Ranzy*, 2010 WL 936471.

[4] *Carideo*, 2009 WL 3485933.

[5] *Khan v. Dell, Inc*., No. 09–3703, 2010 WL 3283529, at *4 (D.N.J. Aug. 18, 2010) *vacated*, 669 F.3d 350 (3d Cir. 2012) (finding that the mandatory language, "'shall be resolved'" by the NAF, "evince[d] the parties' intent to arbitrate exclusively before a particular arbitrator, not simply an intent to arbitrate generally.").  (*See* discussion of the Third Circuit's decision in *Khan v. Dell, Inc. infra*.)

[6] *Ranzy*, 393 F. App'x 174.

[7] *Rivera v. Am. Gen. Fin. Servs., Inc*., 259 P.3d 803 (N.M. 2011) ("The pervasive references to the NAF in the contract compel our conclusion that the parties intended for the NAF to be the exclusive arbitrator in any out-of-court dispute resolution. The parties explicitly specified that arbitration would proceed under NAF rules and procedures.").

[8] *See Carr v. Gateway, Inc*., 944 N.E.2d 327 (Ill. 2011) (concluding that the mandatory language used by the parties and exclusivity of the NAF rules indicated parties' intent that NAF as the arbitrator was integral to the agreement to arbitrate);

[9] *See Riley v. Extendicare Health Facilities*, 826 N.W.2d 398, 411 (Wis. Ct. App. 2012) *review denied*, 838 N.W.2d 636 (refusing to rewrite the arbitration agreement to "devise a new form and mode of arbitration" that was "not contemplated by the parties").

[10] *See Miller v. GGNSC Atlanta, LLC*, 746 S.E.2d 680 (Ga. Ct. App. 2013) (holding inclusion of NAF rendered arbitration provision unenforceable); *Sunbridge Ret. Care Assocs. LLC v. Smith*, 757 S.E.2d 157 (Ga. Ct. App. 2014) (same).

Indiana,[11] Mississippi,[12] Massachusetts,[13] and Pennsylvania[14] have all struck down arbitration agreements adopting the NAF Code of Procedure and/or naming the NAF as the exclusive arbitral forum. In addition, the Courts of Appeals for the Second Circuit[15] and Eleventh Circuit,[16] and state Supreme Courts in South Carolina[17] and Mississippi[18] have found analogous unavailable forums to be "integral" to the parties' agreement to arbitrate.

While certain courts have found the NAF to be non-integral to the arbitration agreement, the contract language at issue in the vast majority of those cases was permissive (*e.g.*, claims "may

---

[11] *See Geneva–Roth, Capital, Inc. v. Edwards*, 956 N.E.2d 1195, 1202-03 (Ind. Ct. App. 2011) ("The pervasive references to the NAF in the contract compel our conclusion that the parties intended for the NAF to be the exclusive arbitrator in any out-of-court dispute resolution."); *Apex 1 Processing, Inc. v. Edwards*, 962 N.E.2d 663 (Ind. Ct. App. 2012) (same).

[12] *See GGNSC Tylertown, LLC v. Dillon*, 87 So. 3d 1063, 1066 (Miss. Ct. App. 2011) ("The arbitration agreement before us clearly reflects that [defendant] sought to have its disputes resolved exclusively by arbitration in accordance with the NAF, a forum that now refuses to arbitrate disputes such as the one in the present case. In keeping with the precedent of the Mississippi Supreme Court, this Court recognizes that the forum in the agreement between Tylertown and Dillon is no longer available, and we 'decline[ ] to order the lower court to pick a forum' not anticipated by either party.").

[13] *See Licata v. GGNSC Malden Dexter LLC*, No. SUCV2011-02815-A, 2012 WL 1414881, at *8 (Mass. Super. Ct. 2012) ("notwithstanding the severance clause in the Agreement, this Court finds the selection of NAF to be integral to the parties' bargain in light of the emphatic language identifying NAF and incorporating the NAF Code of Procedure.").

[14] *See Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 221 (Pa. Super. Ct. 2010) (refusing to "rewrite an arbitration agreement [designating NAF] and insert additional terms to replace an unenforceable provision that was integral to the agreement.").

[15] *In re Salomon*, 68 F.3d 554.

[16] *Inetianbor v. CashCall, Inc.*, 768 F.3d 1346 (declining to compel arbitration in unavailable tribal forum).

[17] *See Grant v. Magnolia Manor–Greenwood, Inc.*, 678 S.E.2d 435, 438-39 (S.C. 2009) (holding that specific designation of a particular arbitrator was an integral term).

[18] *See Covenant Health & Rehab. of Picayune, LP v. Estate of Moulds ex rel. Braddock*, 14 So. 3d 695, 707 (Miss. 2009) (denying motion to compel arbitration and noting "[a] court should not be used to reform a contract to select a forum not anticipated by either of the parties.").

be filed" at the NAF rather than "shall"),[19] or the provision required only the adoption of the NAF rules, not filing at the NAF office.[20]

A similar fact pattern was at issue in a Southern District of New York decision finding that an NAF designation was not "integral."  In *Crewe v. Rich Dad Educ., LLC,* 884 F. Supp. 2d 60, 76-77 (S.D.N.Y. 2012), the agreement named NAF as the arbitral forum, but also stated: "We will agree on another binding arbitration forum if NAF ceases operations."  Unsurprisingly, the court found that "the parties' agreement reflects a broader intention to arbitrate even if the designated forum or fora prove unavailable, [and as such] there is no such barrier to the appointment of an alternative forum."  *Id*.  No such "broader intention" is manifested in the SFS Agreements, which name NAF as the exclusive arbitral forum and never indicate a substitute arbitrator can be named.

While the Third Circuit in *Khan v. Dell Inc*., 669 F.3d 350 (3rd Cir. 2012), held by a 2-1 majority that the term "shall" was not exclusive in a contract clause stating that disputes "shall be resolved exclusively and finally by binding arbitration administered" by the NAF, that panel so held because "'exclusively' could be read to modify 'binding arbitration,' 'the National Arbitration Forum,' or both." *Id*. at 351, 355.  Although the arbitration language at issue here differs from that in *Khan*, Moss respectfully encourages the Court to adopt the dissent's rationale in *Khan*, which joined the great weight of authority to recognize that "[t]he plain text of the arbitration agreement clearly states that the selection by [defendant] Dell of the NAF as arbitrator was integral to the agreement, and leads me to conclude that Section 5 of the FAA is inapplicable and the unavailability of the NAF precludes arbitration."  *Id*. at 358 (Hon. Dolores Korman Sloviter,

---

[19] *See, e.g., Adler v. Dell, Inc*., No. 08-cv-13170, 2009 WL 4580739, at *1 (E.D. Mich. Dec. 3, 2009) (providing that claims "may be filed with the NAF," not that they "shall").

[20] *See, e.g., Brown*, 211 F.3d at 1220 (arbitration clause providing only that any dispute "shall be resolved by binding arbitration under the Code of Procedure of the [NAF]," with no requirement that claims shall be filed at NAF or that NAF will waive fees).

dissenting).  The dissent in *Khan* raised another point applicable to this case:

> The majority avoids any discussion of the underlying reason why arbitration by NAF is unavailable.  In an action pending in Minnesota, the Minnesota Attorney General made public the results of its year-long investigation that showed that NAF, far from being the neutral arbitration forum contemplated by Congress when it enacted the Federal Arbitration Act, represented to corporations that it would appoint anti-consumer arbitrators and discontinue referrals to arbitrators who decided cases in favor of consumers . . . .

> Rather than disputing the allegations, NAF accepted a consent judgment that barred it from administering and participating in all consumer arbitrations . . . It cannot be insignificant that Dell named NAF as the exclusive forum in its arbitration clauses. It followed that the District Court refused Dell's request to designate a substitute arbitrator.  It was certainly not error for the District Court in this case to deny substitution at the behest of Dell.  Even assuming that in the usual case, substitution of a neutral arbitrator would be an acceptable alternative, it is evident that this is not an ordinary case and we should affirm the District Court's denial of Dell's motion.

*Id*. at 358, 359.

Likewise here, and as discussed further below, it was no accident that an illegal payday lender designated the NAF as the exclusive arbitral forum even more than a year after the forum ceased conducting consumer arbitrations.  Plaintiff requests that this court join the vast majority of state and federal courts to examine the issue and find the NAF arbitral forum exclusive and integral to Plaintiff's agreement with SFS.  A finding to the contrary would require this Court to rewrite an arbitration agreement and insert additional terms to replace a provision that was integral to the agreement.  That is not contemplated or warranted by the FAA.

### C. SFS's Continued Failure to Designate a Substitute Arbitral Forum for A Year After its Chosen Arbitrator Became Unavailable Indicates SWB Intended NAF Exclusively to Perform Arbitrations.

The NAF is not an available arbitral forum for consumers—and it has not been for quite some time.  In 2007, the consumer advocacy group Public Citizen investigated the NAF and

concluded that the forum was severely biased against consumers.[21]   The following year, *Bloomberg Businessweek* published an article reporting that the NAF marketed its services to debt collectors and law firms.  The article also noted that in California, the only state where arbitration results are made public, creditors won in 99.8% of NAF cases decided by arbitrators on the merits.[22]  On July 14, 2009, after a year-long investigation, the Minnesota Attorney General filed suit against the NAF.

The lawsuit accused the NAF of, among other things, actively concealing its affiliation with a New York hedge fund group that owns one of the country's major debt collection enterprises, working with creditors behind the scenes to draft arbitration clauses for creditors, advising creditors on arbitration legal trends, drafting claims to be filed against consumers, and soliciting creditors to use its arbitration services by marketing the forum as a more effective means of debt collection.  Three days after the lawsuit was filed, the NAF entered into a consent judgment agreeing that it would no longer (a) accept any fee for processing any new Consumer Arbitration; (b) administer or process any new Consumer Arbitrations; (c) in any manner participate in any new Consumer Arbitration; and (d) attempt to influence the outcome of any arbitration proceeding currently pending before it.  *See* Ex. C to Plaintiff's Motion to Partially Vacate the Stay.  In accordance with the judgment, the NAF stopped performing consumer arbitrations in 2009.

Moss's SFS Loan Agreements were entered into *more than a year after* the NAF stopped performing the arbitrations that the SFS Loan Agreements call for it to perform.  And yet SFS never named a substitute arbitral forum during the year before Moss applied for her illegal payday

---

[21] *See* John O'Donnell, *The Arbitration Trap: How Credit Card Companies Ensnare Consumers*, Public Citizen, Sept. 2007 (Feb. 10, 2015) http://www.citizen.org/documents/ArbitrationTrap.pdf.

[22] *See* Robert Berner and Brian Grow, *Banks vs. Consumers (Guess Who Wins)*, (Bloomberg Businessweek, June 4, 2008 (Feb. 10, 2015), http://www.businessweek.com/stories/2008-06-04/banks-vs-dot-consumers-guess-who-wins.

loans.  Perhaps SFS's refusal to name a substitute arbitral forum was due to a refusal to entrust its arbitrations to a forum without such a decided anti-consumer bias.  Perhaps SFS preferred the procedures of the NAF to the exclusion of any others, or preferred the NAF's roster of pro-debt collector arbitrators to the arbitrators at other arbitral forums.  Perhaps the explanation is simple inertia.  Or perhaps SFS decided to wait, and continues to wait, for the NAF to get back to its absurdly one-sided consumer arbitrations.  Whatever the reason, the fact that SFS never chose a substitute arbitral forum and continued to issue loan agreements naming the NAF more than a year after the NAF got out of the consumer arbitration business indicates that SFS considered the NAF an integral part of the agreement with Moss.  Respectfully, if not even the contracting party itself decided to name a substitute arbitrator, and continued issuing contracts designating NAF, this Court should not step in and appoint a different arbitral forum for it.

In *Carr v. Gateway, Inc*., 944 N.E.2d 327, *supra* n.8, the Illinois Supreme Court  addressed the applicability of Section 5 where an arbitration agreement provided that the parties' disputes would be resolved "'exclusively and finally by arbitration administered by the National Arbitration Forum (NAF) and conducted under its rules.'"  *Id*. at 330.  The *Carr* court concluded that the "choice of the NAF was so central to the agreement to arbitrate that the unavailability of the NAF brought the agreement to an end." *Id*. at 336-37.  In reaching this conclusion, the *Carr* court agreed with federal courts holding that Section 5 "may be applied to name a substitute arbitrator where the parties' designated arbitral forum fails, unless the designation of the arbitral forum is integral to the parties' agreement to arbitrate"  and acknowledged  that "the mere fact parties name an arbitral service to handle arbitrations and specify rules to be applied does not, standing alone, make that designation integral to the agreement . . . [because] Section 5 anticipates that a named arbitral forum ***may become unavailable*** and it provides a mechanism to appoint a substitute."  *Id*. at 331,

16

335. (emphasis added).  But here, the forum did not "become" unavailable after Moss's Loan Agreements were provided to her by SFS.  Rather, the NAF was unavailable at the time the agreement was made—and had been so for more than a year.  Section 5 is not meant to rescue parties, like SFS, who fail to appoint an available forum in the first place.

In declining to appoint a substitute forum, the *Carr* court noted that the defendant presented non-negotiable terms to plaintiff, and that the agreement at issue adopted the NAF Code of Procedure which "restricts the use of its rules to only those entities and individuals providing arbitral services by agreement with the NAF[.]"  *Id*. at 336.  The court recognized that this "militates in favor of a finding that the designation of the NAF and its rules was integral to the parties' agreement to arbitrate."  *Id*.  Likewise here, SFS was solely responsible for the drafting of its agreements, and specifically adopted the NAF Code of Procedure, which only contemplates the use of NAF arbitrators.[23]  The *Carr* court's reasoning is especially applicable in this case, where for more than a year SFS failed to amend the non-negotiable terms it presented to consumers.

V.     **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court Partially vacate the stay of Moss's action and allow Plaintiff to pursue her claims against Defendants First Premier and Bay Cities in this Court.

---

[23] *See* footnote 1, *supra*.

Dated:  February 13, 2015                 Respectfully submitted,

                                          **DARREN KAPLAN LAW FIRM, P.C.**

                                          By: /s/ Darren T. Kaplan
                                          Darren T. Kaplan (DK 8190)
                                          1359 Broadway, Suite 2001
                                          New York, NY 10018
                                          Tel: (212) 999-7370
                                          Fax: (646) 390-7410
                                          dkaplan@darrenkaplanlaw.com


                                          **TYCKO & ZAVAREEI LLP**
                                          Hassan A. Zavareei, *admitted pro hac vice*
                                          Jeffrey D. Kaliel, *admitted pro hac vice*
                                          2000 L Street, N.W., Suite 808
                                          Washington, D.C. 20036
                                          Telephone: 202-973-0900
                                          Facsimile: 202-973-0950
                                          hzavareei@tzlegal.com
                                          jkaliel@tzlegal.com


                                          **STUEVE SIEGEL HANSON LLP**
                                          Norman Siegel, *admitted pro hac vice*
                                          Stephen N. Six, *admitted pro hac vice*
                                          460 Nichols Road, Suite 200
                                          Kansas City, MO 64112
                                          Tel:  (816) 714-7100
                                          Fax:  (816) 714-7101
                                          siegel@stuevesiegel.com
                                          six@stuevesiegel.com


                                          **KOPELOWITZ OSTROW P.A.**
                                          Jeffrey M. Ostrow, *admitted pro hac vice*
                                          200 S.W. 1st Avenue, 12th Floor
                                          Fort Lauderdale, Florida 33301
                                          Tel:     (954) 525-4100
                                          Fax:     (954) 525-4300
                                          ostrow@KOlawyers.com