UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DEBORAH MOSS, and
WILLIAM HILLICK
on Behalf of Themselves and All Others Similarly Situated,

Plaintiffs,

vs.

BMO HARRIS BANK, N.A., FIRST PREMIER BANK, a South Dakota State-Chartered Bank, and BAY CITIES BANK, a Florida State-Chartered Bank

Defendants.

**CASE NO. 2:13-CV-05438-JFB-GRB**

**Hon. Joseph F. Bianco, U.S.D.C.J.**

**PLAINTIFF DEBORAH MOSS'S REPLY TO DEFENDANT FIRST PREMIER BANK'S OPPOSITION TO HER MOTION FOR AN ORDER PARTIALLY VACATING THE STAY ENTERED IN THIS CASE**

Darren T. Kaplan
DARREN KAPLAN LAW FIRM, P.C.
1359 Broadway, Suite 2001
New York, NY 10018
Tel: (212) 999-7370
Fax: (646) 390-7410
dkaplan@darrenkaplanlaw.com

Hassan A. Zavareei, admitted *pro hac vice*
Jeffrey D. Kaliel, admitted *pro hac vice*
TYCKO & ZAVAREEI LLP
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

Norman Siegel, admitted *pro hac vice*
Stephen N. Six, admitted *pro hac vice*
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
six@stuevesiegel.com

Jeffrey M. Ostrow, admitted *pro hac vice*
KOPELOWITZ OSTROW P.A.
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
ostrow@KOlawyers.com

*Attorneys for Deborah Moss*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................... 2

I. UNTIL SHE RECEIVED A NOTICE FROM THE NAF, PLAINTIFF COULD NOT BE CERTAIN THE NAF WOULD DECLINE TO CONDUCT AN ARBITRATION OF PLAINTIFF'S CLAIMS. ........................................................................... 2

II. PLAINTIFF'S MOTION TO VACATE THE STAY IS PROCDEURALLY PROPER AND SATISFIES THE CRITERA FOR GRANTING THAT MOTION. ................................... 3

III. SECTION 5 OF THE FAA DOES NOT REQUIRE APPOINTMENT OF A SUBSTITUTE ARBITRATOR. ............................................................................................ 4

CONCLUSION ........................................................................................................ 10

# TABLE OF AUTHORITIES

## Cases

*Adler v. Dell Inc.*,
No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009) .................................... 4, 10

*Allen v. Apollo Grp., Inc.*,
No. CIV.A.H-04-3041, 2004 WL 3119918 (S.D. Tex. Nov. 9, 2004) ...................................... 9

*Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*,
225 F. Supp. 2d 263 (E.D.N.Y. 2002) ........................................................................... 3

*Apex 1 Processing, Inc. v. Edwards*,
962 N.E.2d 663 (Ind. Ct. App. 2012)........................................................................... 9

*Astra Footwear Indus. v. Harwyn Int'l Inc.*,
442 F. Supp. 907 (2d Cir. 1978) ............................................................................ 7, 8

*Carideo v. Dell, Inc.*,
No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009)....................................... 5

*Dean Witter Reynolds Inc. v. Byrd*,
470 U.S. 213 (1985)................................................................................................ 4

*Erving v. Virginia Squires Basketball Club*,
468 F.2d 1064 (2d Cir. 1972).................................................................................... 7

*Geneva–Roth Capital, Inc. v. Edwards*,
956 N.E.2d 1195 (Ind. Ct. App. 2011) ......................................................................... 9

*GGNSC Montgomery, LLC v. Norris*,
No. 2:12CV711-CSC, 2013 WL 627114 (M.D. Ala. Feb. 20, 2013)...................................... 10

*Green v. U.S. Cash Advance Illinois, LLC*,
724 F.3d 787 (7th Cir. 2013) .................................................................................. 10

*In re Checking Account Overdraft Litig.*,
734 F. Supp. 2d 1294 (S.D. Fla. 2010) ........................................................................ 1

*In re Salomon Inc. Shareholders' Derivative Litigation*,
68 F.3d 554 (2d Cir. 1995)........................................................................... 5, 6, 7, 8

*Inetianbor v. CashCall, Inc.*,
768 F.3d 1346 (11th Cir. 2014) ................................................................................ 6

*Inetianbor v. CashCall, Inc.*,
No. 13-60066-CIV, 2013 WL 1325327 (S.D. Fla. Apr. 1, 2013)............................................. 4

*Khan v. Dell Inc.*,
669 F.3d 350 (3d Cir. 2012)........................................................................................ 10

*Meskill v. GGNSC Stillwater Greeley LLC*,
862 F.Supp.2d 966 (D. Minn. 2012)............................................................................ 10

*Miller v. Aaacon Auto Transp., Inc.*,
545 F.2d 1019 (5th Cir. 1977) ........................................................................................ 4

*Moss v. BMO Harris Bank, N.A.*,
24 F.Supp.3d 281 (E.D.N.Y. 2014) ................................................................................ 1

*Ranzy v. Tijerina*,
393 F. App'x 174 (5th Cir. 2010)............................................................................... 7, 9

*Riley v. Extendicare Health Facilities*,
826 N.W.2d 398 (Wis. Ct. App. 2012) ............................................................................ 5

*Rivera v. Am. Gen. Fin. Servs., Inc.*,
259 P.3d 803 (N.M. 2011) ............................................................................................. 5

*Stewart v. GGNSC-Canonsburg, L.P.*,
9 A.3d 215 (Pa. Super. Ct. 2010)..................................................................................... 5

*United States v. Certain Real Prop. & Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*,
751 F. Supp. 1060 (E.D.N.Y. 1989) ........................................................................... 3, 7

*Warnes, S.A. v. Harvic Int'l, Ltd.*,
No. 92 CIV. 5515 (RWS), 1993 WL 228028 (S.D.N.Y. June 22, 1993) .................................. 8

**Statutes**

9 U.S.C. § 3.............................................................................................................. 1, 4

9 U.S.C. § 5............................................................................................................ *passim*

18 U.S.C. § 1962............................................................................................................. 2

## INTRODUCTION

In June 2014, this Court entered a lengthy, carefully considered decision granting motions to compel arbitration made by Defendants BMO Harris Bank, N.A. ("BMO"), First Premier Bank ("First Premier") and Bay Cities Bank ("Bay Cities") and staying the case under 9 U.S.C. § 3. *See Moss v. BMO Harris Bank, N.A.*, 24 F.Supp.3d 281 (E.D.N.Y. 2014). The Court's decision followed an hour of oral argument and hundreds of pages of briefing by the litigants on the issue of arbitration. What Defendants First Premier and Bay Cities failed to do even once during that briefing and argument, however, was alert the Court that the National Arbitration Forum ("NAF"), the sole and exclusive arbitrator designated in the arbitration agreements they were asking this Court to enforce, had been barred from accepting consumer arbitrations by a Consent Judgment with the Minnesota Attorney General. [1] Nevertheless, Plaintiff Deborah Moss ("Plaintiff" or "Moss") did as this Court ordered and sought to initiate arbitration against First Premier and Bay Cities with the NAF. On January 28, 2015, the NAF wrote to counsel for Plaintiff that "we are no longer able to accept arbitration claims involving consumers pursuant to a Consent Judgment entered in Hennepin County District Court in July 2009 between the Minnesota Attorney General and the National Arbitration Forum." (*See* Doc. 94-1, p. 103.)

[1] Although completely irrelevant, both First Premier and Bay Cities imply that Plaintiffs' counsel should be charged with knowledge that the NAF was no longer accepting consumer arbitrations because one of the dozens of separate cases in MDL 2036 (*In re Checking Account Overdraft Litig.*) involved a deposit agreement that named the NAF as arbitrator and Plaintiff's counsel "participated" in another case that was also part of that MDL. (Doc. 95, p. 3, n.1.) None of Plaintiff's attorneys were attorneys of record in the MDL case in which the deposit agreement named the NAF as arbitrator, *see In re Checking Account Overdraft Litig.*, 734 F. Supp. 2d 1294, 1295 (S.D. Fla. 2010) (listing Attorneys and Law Firms), and there is no argument that it was not generally known that the NAF was barred from accepting consumer arbitrations in 2009. Rather, the salient issue is whether the NAF would consider Plaintiff's claims as a "consumer arbitration" under the Consent Judgment when it was presented to them and, if the rejection of Plaintiff's claims by the NAF was a foregone conclusion, why neither First Premier nor Bay Cities chose to alert the Court that the Consent Judgment was in effect. Perhaps more importantly, Plaintiff's responses in opposition to Defendants' motions to compel were premised on the fact that she never agreed to arbitrate with these parties at all, making it irrelevant which arbitral fora were designated in contracts to which First Premier and Bay Cities were not parties.

Now that it is obvious that the arbitral forum for her claims against First Premier and Bay Cities is unavailable, Plaintiff has returned to this Court to request that the stay of proceedings imposed here be vacated as to those defendants. First Premier opposes this motion by re-characterizing it as something other than a motion to vacate. Additionally, and in a remarkable display of *chutzpah*, First Premier argues that it was *Plaintiff's* responsibility to inform the Court that the arbitral forum in which it moved to compel was unavailable—despite the fact that Plaintiff could not have known this with certainty. Finally, citing inapposite authority, First Premier argues that this Court should rewrite the arbitration agreement to which it is not even a party to allow for arbitration in a substitute forum. The stay of proceedings should be vacated as to First Premier and Bay Cities.

## ARGUMENT

### I. UNTIL SHE RECEIVED A NOTICE FROM THE NAF, PLAINTIFF COULD NOT BE CERTAIN THE NAF WOULD DECLINE TO CONDUCT AN ARBITRATION OF PLAINTIFF'S CLAIMS.

Although Plaintiff vigorously disputes that she had any obligation to preemptively alert the Court as to the unavailability of the arbitral forum for which *First Premier moved*, the NAF's refusal to accept the arbitration of Plaintiff's claims was not the foregone conclusion that First Premier suggests it was. While Plaintiff's transactions with the illegal payday lenders were of a consumer nature, Plaintiff's claims are sophisticated legal theories premised on the law and rules that govern the U.S. banking system and the Automated Clearing House ("ACH") Network, including claims of violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1962. Because the definition of "consumer arbitration" contained in the consent judgment confines itself to ". . . a dispute between a business entity and a private individual which relates to goods, services, or property of any kind allegedly provided by any business entity

to the individual, or payment for such goods, services, or property," (*see*, Doc. 96-2, p. 5),[2] it would have been arguably possible for the NAF to find at least some of Moss's claims not to fall within the ambit of the consent decree. What is more, the Consent Judgment includes a supplementary letter dated July 17, 2009 providing for "modification of this Consent Judgment" after two years (or after one year, if the special master "concludes that such early modification will be in the interests of justice"). (Doc. 96-2, p. 8.) Plaintiff had no way to know if any modification to the Consent Judgment had been granted or had been petitioned for since the entry of this Court's Order until the NAF wrote back to Plaintiff's attorney, declining to arbitrate Moss's claims.

In sum, it could not have been Plaintiff's responsibility to alert the Court of the NAF's unavailability when she was not certain of it.

## II. PLAINTIFF'S MOTION TO VACATE THE STAY IS PROCDEURALLY PROPER AND SATISFIES THE CRITERA FOR GRANTING THAT MOTION.

First Premier expends considerable effort insisting that Plaintiff's motion to vacate the stay is a procedurally improper attempt to reargue the prior Motion to Compel. However, it is well settled that a court-ordered stay may be vacated at any time whenever the circumstances on which the stay was granted change. *See, e.g., Am. Express Bus. Fin. Corp. v. RW Prof'l Leasing Servs. Corp.*, 225 F. Supp. 2d 263, 266 (E.D.N.Y. 2002) ("The plaintiff may move to vacate the stay if changes in circumstances so warrant"); *United States v. Certain Real Prop. & Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*, 751 F. Supp. 1060, 1063 (E.D.N.Y. 1989) ("Moreover, the Government can always move to vacate the stay if a change in circumstances makes this appropriate").

[2] This page of the Consent Judgment between the NAF and the Minnesota Attorney General was mistakenly omitted from Exhibit C to the "Declaration of Darren Kaplan in Support of Deborah Moss's Motion for an Order Partially Vacating the Stay Entered in this Case." (Doc. 94-1). Fortunately, First Premier provided a complete copy of the Consent Judgment in its opposition.

In particular, stays granted pursuant to 9 U.S.C. § 3 are routinely vacated when a previously ordered arbitration cannot proceed or was unreasonably delayed. *See, e.g.*, *Miller v. Aaacon Auto Transp., Inc.*, 545 F.2d 1019, 1020 (5th Cir. 1977) (per curiam) ("The district court's order granting the stay [pursuant to 9 U.S.C. § 3] was equivalent to an injunction. An injunction may be modified or dissolved in the discretion of the court when conditions have so changed that it is no longer needed or is rendered inequitable.") (citations omitted); *Inetianbor v. CashCall, Inc.*, No. 13-60066-CIV, 2013 WL 1325327 (S.D. Fla. Apr. 1, 2013) (granting plaintiff's motion to reopen case and lift stay where designated arbitrator declined to initiate arbitration). Indeed, First Premier's own cited authority *Adler v. Dell Inc.*, No. 08-CV-13170, 2009 WL 4580739 (E.D. Mich. Dec. 3, 2009), was decided on a motion to lift a pre-arbitration stay. *See id.* at *5. Here the previously ordered arbitration with the NAF cannot proceed and thus, the Court should vacate the stay it ordered under 9 U.S.C. § 3.[3]

## III. SECTION 5 OF THE FAA DOES NOT REQUIRE APPOINTMENT OF A SUBSTITUTE ARBITRATOR.

Ignoring the vast majority of case law examining this issue, First Premier argues that "the FAA requires the appointment of a substitute for the NAF" under 9 U.S.C. § 5. (Doc. 95, p. 16.) But as discussed extensively in Plaintiff's motion to vacate the stay, the Second Circuit and courts around the country disagree. Where, as here, an arbitration provision specifies a particular arbitral

[3] First Premier's argument that Plaintiff's motion should be denied because she unreasonably delayed pursuing arbitration (Doc. 95, pp. 14-16) is misguided. After being compelled to arbitrate, Plaintiff carefully considered her legal options prior to initiating arbitration. Plaintiff's counsel weighed whether initiating potentially confidential individual arbitrations against three defendants with considerably more resources would vindicate the rights of the Plaintiff and the putative class. Plaintiff's counsel also spent time reviewing the NAF Code, adopted by the SFS Loan Agreements, and procedures for initiating NAF arbitration as well as researching how arbitrators have treated similar claims. This does not constitute an "unreasonable" delay. Moreover, the only reason that the parties are in this position is because First Premier failed to address this issue when it first sought to compel Plaintiff to arbitration before the NAF. As a result of this failure, First Premier has successfully thwarted both policy goals of the FAA: "enforcement of private agreements and encouragement of efficient and speedy dispute resolution." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 221 (1985).

forum, and provides no alternatives, the arbitral forum is deemed "integral" to the arbitration agreement. A court may not then re-write the parties' contract when the specified arbitral forum is unavailable.[4] Here, application of that general rule is more urgent, where a *non-party* (First Premier) is trying to re-write an arbitration provision the *contracting parties* used to repeatedly nominate the NAF as the arbitral forum—even for a full year after the NAF stopped performing consumer arbitrations. Indeed, First Premier has identified no other ruling in which a court rewrote an arbitration provision at the request of a non-party to the contract.

In *In re Salomon Inc. Shareholders' Derivative Litigation*, 68 F.3d 554 (2d Cir. 1995), the Second Circuit addressed an arbitration provision that required all disputes to be resolved by the New York Stock Exchange ("NYSE") "and only the NYSE, 'in accordance with the [NYSE] Constitution and Rules.'" *Id*. at 557. The NYSE declined to arbitrate the dispute, and the defendants went back to the district court, seeking the appointment of substitute arbitrators under § 5 of the FAA." *Id*. at 555-56. As here, the defendants argued that another arbitrator could be appointed to arbitrate using the NYSE's rules. *Id*. at 558. Looking "to the text of the arbitration agreements themselves," the Second Circuit concluded that "the parties had contractually agreed that *only* the NYSE could arbitrate any disputes[.]" *Id*. at 558-59 (emphasis in original). The court held that a district court cannot "use § 5 [of the FAA] to circumvent the parties' designation of an exclusive arbitral forum" because the unavailability of the parties' named arbitration provider does

---

[4] *See, e.g., Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933, at *6 (W.D. Wash. Oct. 26, 2009) ("To appoint a substitute arbitrator would constitute a wholesale revision of the arbitration clause."); *Riley v. Extendicare Health Facilities*, 826 N.W.2d 398, 411 (Wis. Ct. App. 2012) (declining to "rewrite substantial portions of the agreement not contemplated by the parties, and to devise a new form and mode of arbitration for the parties."); *Rivera v. Am. Gen. Fin. Servs., Inc*., 259 P.3d 803, 815 (N.M. 2011) ("Given the number of references to the NAF . . . and the substantial reliance on the NAF Code of Procedure throughout the contract . . . for us to change those core provisions would violate our duty to enforce the agreement according to its terms"); *Stewart v. GGNSC-Canonsburg, L.P*., 9 A.3d 215, 221 (Pa. Super. Ct. 2010) ("this Court will not rewrite an arbitration agreement and insert additional terms to replace an unenforceable provision that was integral to the agreement . . . this type of action would run contrary to the clear intent of the parties as expressed by the plain language of the Agreement itself").

not constitute "'a lapse in the naming of an arbitrator"' within the meaning of § 5. *Id*. at 560-61. Indeed, "the lapse referred to in § 5 means a lapse in time in the naming of the arbitrator or in the filling of a vacancy on a panel of arbitrators *or some other mechanical breakdown in the arbitrator selection process*." *Id*. at 560 (emphasis added). First Premier tries to distinguish this controlling case by arguing that in *In re Salomon*, the "NYSE exercised its discretion and decided plaintiffs' claims were not arbitrable" as opposed to here where the "NAF has made no similar determination[.]" (Doc. 95, pp. 18, 19). The distinction is illusory. The NYSE apparently declined arbitration because it was not equipped to hear shareholder-derivative suits. *See In re Salomon*, 68 F.3d at 556. Similarly here, the NAF declined arbitration because it affirmatively consented to no longer "accept arbitration claims involving consumers[.]" (Doc. 94-1, p. 103.)

*In re Salomon* provides circumstances where a "mechanical breakdown" has occurred, including deadlock in naming of arbitrator, the arbitrator's death left vacancy on panel, agreement's *procedure* for selecting arbitrator no longer in effect, or the arbitrator designated in parties' agreement had conflict of interest. *See In re Salomon*, 68 F.3d at 560. There was no such "mechanical breakdown" in *In re Salomon* or here—in both cases, the arbitral forum *required* by the agreements declined to administer arbitration. This does not constitute a "lapse"—especially where the payday lender who drafted the contract repeatedly re-designated NAF as the arbitral forum more than a full year after it stopped being available—that is not a lapse, it is a nullity.

The majority of Circuit Courts to consider this issue agree that Section 5 cannot be invoked to appoint a substitute arbitrator in these circumstances. *See, e.g., Inetianbor v. CashCall, Inc.*, 768 F.3d 1346, 1349-50 (11th Cir. 2014) (citing *In re Salomon* and holding that "§ 5 notwithstanding, 'the failure of the chosen forum preclude[s] arbitration' whenever 'the choice of forum is an integral part of the agreement to arbitrate, rather than an ancillary logistical concern' which

'remains the majority rule among Circuit Courts'"); *Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010) (expressly following *In re Salomon* and concluding that "the parties explicitly agreed that the NAF shall be the exclusive forum for arbitrating disputes . . . Thus, a federal court need not compel arbitration in a substitute forum [under § 5].").

In an attempt to avoid controlling precedent, First Premier cites to three distinguishable cases decided years before *In re Salomon*. In *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972), the court appointed a "neutral" arbitrator after disqualification of another because the parties were contractually "required to arbitrate any disputes arising between them." *Id*. at 1067. Aside from being handed down over two decades before *In re Salomon* and distinguished by *In re Salomon* (68 F.3d at 560), there is nothing in *Erving* indicating that the parties *exclusively* designated the disqualified arbitrator, as is the case here.

First Premier next cites to the 37-year-old *Astra Footwear Indus. v. Harwyn Int'l Inc*., 442 F. Supp. 907 (2d Cir. 1978), which was also specifically distinguished by *In re Salomon*. In *Astra Footwear*, the parties agreed to arbitrate before an entity that never existed, the "Chamber of Commerce in New York." *Id*. at 908. One party argued the "the parties were referring to the International Chamber of Commerce" while the other argued the parties "intended the New York Chamber of Commerce . . . to arbitrate disputes." *Id*. at 908. Indeed, the parties' dispute centered on *which* arbitrator the parties intended to select, not whether the designated arbitral forum was exclusive. The Second Circuit acknowledged this important distinction and observed that *Astra Footwear* does not stand "for the proposition that district courts may use § 5 to circumvent the parties' designation of an exclusive arbitral forum." *In re Salomon*, 68 F.3d at 561. The court concluded that, "unlike *Astra Footwear*, here the 'dominant intent' of the parties was 'to arbitrate before particular arbitrators[,]' whereas in *Astra Footwear*, the "court could invoke § 5 because

parties intended to arbitrate generally, rather than only if a certain forum was available[.]" *Id.* (citing *Astra Footwear*, 442 F. Supp. at 909). Likewise, First Premier cites to the unreported case *Warnes, S.A. v. Harvic Int'l, Ltd.*, No. 92 CIV. 5515 (RWS), 1993 WL 228028 (S.D.N.Y. June 22, 1993), where the parties agreed to arbitrate "in accordance with the Commercial Arbitration Rules of the New York Commercial Arbitration Association," but did not agree on an exclusive arbitrator. *See id.* at *1. Here, the SFS agreements expressly adopt the NAF Code *and* direct that claims "shall be filed" with the NAF.

First Premier next argues that the text of the specific contract at issue does not indicate the designation of NAF was integral to the contract by reading a handful of sentences and phrases in total isolation, focusing on a few islands of vague arbitration language in a sea of specific references to NAF. For example, First Premier cites to one sentence providing:

> **NOTICE**: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION.

First Premier argues that this phrase "does not reference to NAF." (Doc. 95, p. 22). What First Premier fails to mention, however, is that this sentence appears *immediately after* a full, dense "Arbitration of all Disputes" paragraph that repeatedly mentions the NAF —and only the NAF— as the arbitral forum and unequivocally states that the only way to file an arbitration claim is to file through the NAF:

> **ARBITRATION OF ALL DISPUTES**: You and we agree that any and all claims, disputes or controversies . . . ***shall be resolved*** by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed. No class arbitration. . . . Rules and forms of the NAF may be obtained and ***all claims shall be filed at any NAF office***, on the World Wide Web at www.arb-forum.com, by telephone at 800-474-2371, or at "National Arbitration Forum, P.O. Box 50191, Minneapolis, Minnesota 55405." ***Your arbitration fees will be waived by the NAF in the event you cannot afford to pay them***. The cost of any participatory, documentary or telephone hearing, if

> one is held at your or our request, will be paid for solely by us as provided in the NAF Rules and, if a participatory hearing is requested, it will take place at a location near your residence . . . .

Doc. 51-1, pp. 18, 20 (emphasis added). This substantially similar language appears in two separate places in the SFS Loan Agreements—once in the "Application" section (Doc. 51-1, p. 18), and once again in the "Loan Note and Disclosure" section (Doc. 51-1, p. 20). First Premier's attempt to side-step the clear dictates of the arbitration provisions, by reading a sentence or two in isolation, must fail.[5] First Premier also contends that the agreements' use of the word "shall" supposedly makes arbitration mandatory but not before the NAF because the term "immediately precedes and modifies the requirement that claims 'be resolved by binding (and not joint) arbitration.'" (Doc. 95, p. 23) (citing Doc. 51-1, p. 20.) But First Premier simply ignores the fact that the term "shall" is also used later in the paragraph requiring that all claims "shall be filed at any NAF office," the NAF's website, phone number, or by mail to the NAF. There are simply no other claim filing options, other than through the NAF. In leaving no other filing options, the Loan Agreements make clear that arbitration shall be conducted *exclusively* by the NAF. Other courts considering *identical language* agree that such language is exclusive and indicates the choice of NAF as arbitrator is "integral" to the arbitration provision.[6]

---

[5] *See, e.g., Allen v. Apollo Grp., Inc.*, No. CIV.A.H-04-3041, 2004 WL 3119918, at *5 (S.D. Tex. Nov. 9, 2004) ("arbitration agreements, like all contracts are to be read as a whole and interpreted so that no provision is rendered meaningless").

[6] *See, e.g., Ranzy*, 393 F. App'x at 176 (interpreting the same language and holding "the arbitration agreement plainly states that Ranzy "shall" submit all claims to the NAF for arbitration and that the procedural rules of the NAF "shall" govern the arbitration.. . . . Thus, a federal court need not compel arbitration in a substitute forum if the designated forum becomes unavailable."); *Apex 1 Processing, Inc. v. Edwards*, 962 N.E.2d 663 (Ind. Ct. App. 2012) *transfer denied*, 969 N.E.2d 87 (Ind. 2012) and *cert. denied*, 133 S. Ct. 650 (U.S. 2012) (interpreting same language and holding "[a] claim must be filed at an NAF office or on an NAF website . . . . Thus, the identification of NAF as the arbitrator was integral to the contract, and the arbitration provision fails."); *Geneva–Roth Capital, Inc. v. Edwards*, 956 N.E.2d 1195, 1197, 1203 (Ind. Ct. App. 2011) (determining that the contractual language at issue, which required arbitration "by and under the Code of Procedures of [NAF]," and required claims "shall be filed at any NAF office," indicated the choice of NAF as arbitrator was "integral" to the arbitration provision).

First Premier also provides a selective review of the case law regarding substitution of arbitrators, and urges the Court to adopt what is clearly the minority view. Indeed, First Premier cites to a number of cases where the parties adopt the NAF Code of Procedure, but do not designate the NAF as the exclusive arbitral forum.[7] Here, by contrast, the agreements expressly adopt the NAF Code *and* direct that claims "shall be filed" with the NAF. The overwhelming weight of authority holds that this designates the NAF as "integral" to the agreement to arbitrate and therefore does not warrant appointment of a substitute arbitrator. *See* Doc 94-2, pp. 6-14 (collecting cases). Finally, First Premier's contention that the "equities" warrant appointment of a substitute arbitrator is equally misguided. There was no expectation between SFS and Plaintiff that arbitration could take place before an arbitral forum other than the NAF. Permitting an entity that is not even a party to an arbitration agreement to not only enforce the agreement, but then devise a new form and mode of arbitration that was not contemplated by the original parties to the contract would result in an unprecedented expansion of the FAA. The "equities" do not support appointment of a substitute arbitrator where First Premier is clearly invoking another party's arbitration agreement as a means to avoid classwide liability.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court partially vacate the stay of Moss's action and allow her to pursue her claims against First Premier and Bay Citites in this Court.

---

[7] *See, e.g., Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787 (7th Cir. 2013) (adopting NAF Code but not NAF as arbitral forum); *Khan v. Dell Inc*., 669 F.3d 350 (3d Cir. 2012) (same); *GGNSC Montgomery, LLC v. Norris*, No. 2:12CV711-CSC, 2013 WL 627114 (M.D. Ala. Feb. 20, 2013) (same); *Meskill v. GGNSC Stillwater Greeley LLC*, 862 F.Supp.2d 966 (D. Minn. 2012) (same); *Adler v. Dell, Inc*., No. 08-cv-13170, 2009 WL 4580739, at *1 (E.D. Mich. Dec. 3, 2009) (providing that claims "may be filed with the NAF," not that they "shall").

Dated: March 9, 2015

Respectfully submitted,

**DARREN KAPLAN LAW FIRM, P.C.**

By: /s/ Darren T. Kaplan
Darren T. Kaplan (DK 8190)
1359 Broadway, Suite 2001
New York, NY 10018
Tel: (212) 999-7370
Fax: (646) 390-7410
dkaplan@darrenkaplanlaw.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei, *admitted pro hac vice*
Jeffrey D. Kaliel, *admitted pro hac vice*
2000 L Street, N.W., Suite 808
Washington, D.C. 20036
Telephone: 202-973-0900
Facsimile: 202-973-0950
hzavareei@tzlegal.com
jkaliel@tzlegal.com

**STUEVE SIEGEL HANSON LLP**
Norman Siegel, *admitted pro hac vice*
Stephen N. Six, *admitted pro hac vice*
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7100
Fax: (816) 714-7101
siegel@stuevesiegel.com
six@stuevesiegel.com

**KOPELOWITZ OSTROW P.A.**
Jeffrey M. Ostrow, *admitted pro hac vice*
200 S.W. 1st Avenue, 12th Floor
Fort Lauderdale, Florida 33301
Tel: (954) 525-4100
Fax: (954) 525-4300
ostrow@KOlawyers.com

*Attorneys for Deborah Moss*

**CERTIFICATE OF SERVICE**

I hereby certify that on 9th day of March, 2015, the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure and/or the Eastern District of New York's Local Rules, and/or the Eastern District of New York's Rules on Electronic Service through filing by the ECF system, which will send notification of the filing to the attorneys on that system.

/s/Darren T. Kaplan (DK 8190)