UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 13-CV-5438 (JFB) (GRB)
_____

DEBORAH MOSS AND WILLIAM HILLICK,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

VERSUS

BMO HARRIS BANK, N.A., FIRST PREMIER BANK, AND BAY CITIES BANK,

Defendants.
_____

**MEMORANDUM AND ORDER**
July 16, 2015
_____

JOSEPH F. BIANCO, District Judge:

On September 30, 2013, plaintiffs Deborah Moss and William Hillick commenced this action on behalf of themselves and a prospective class, alleging violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962. By Memorandum and Order dated June 9, 2014, the Court granted the defendants' motions to compel arbitration and stayed this case pursuant to 9 U.S.C. § 3.

Presently before the Court is plaintiff Deborah Moss's motion for relief from that Order, on the grounds that the forum designated in the arbitration clause (the National Arbitration Forum) has now declined to arbitrate the case, and thus she cannot arbitrate her claims against Bay Cities Bank and First Premier Bank ("defendants").[1] Defendants oppose the motion, arguing that the Court should appoint a substitute arbitrator pursuant to 9 U.S.C. § 5.

For the reasons discussed below, the Court concludes that defendants Bay Cities Bank and First Premier Bank may no longer enforce the arbitration provisions against plaintiff. In short, there is no question here that the agreed-upon arbitral forum is unavailable. Under the circumstances of this case, the arbitration clause cannot be enforced. Moreover, the Court cannot salvage the arbitration provision by designating a substitute forum because the

---

[1] Plaintiff's claims against BMO Harris Bank are not at issue in this motion, because those claims are governed by an arbitration clause that designates a different arbitration forum. Plaintiff William Hillick does not join in the present motion.

process for naming an arbitrator has not "lapsed" within the meaning of the Federal Arbitration Act, 9 U.S.C. § 5. The Court acknowledges that some circuit courts presented with this issue have reached a different conclusion, and defendants have forcefully argued that this Court should adopt the reasoning of those decisions. However, this Court is bound to follow Second Circuit precedent, and the Court concludes that *In re Salomon Shareholders' Derivative Litig.*, 68 F.3d 554, 560-61 (2d Cir. 1995), resolves this issue in plaintiff's favor. Accordingly, the Court vacates the June 9, 2014 Order, insofar as it compelled Moss to arbitrate her claims against Bay Cities Bank and First Premier Bank.

I. BACKGROUND

This action was commenced on September 30, 2013. On February 3, 2014, defendants filed separate motions to compel arbitration, which the Court granted on June 9, 2014. The Court assumes familiarity with the June 9, 2014 Order, which discussed at length the factual and procedural background of this case. Relevant here is the arbitration provision contained in identical form in each of the loan agreements (the "SFS Loan Agreements") at issue in this case. The arbitration clause states:

> You and we agree that any and all claims, disputes or controversies between you and us, any claim by either of us against the other . . . and any claim arising from or relating to your application for this loan, regarding this loan or any other loan you previously or may later obtain from us, this Note, this agreement to arbitrate all disputes, your agreement not to bring, join or participate in class actions, regarding collection of the loan, alleging fraud or misrepresentation . . . including disputes regarding the matters subject to arbitration, or otherwise, shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed.

(Pl. Ex. A, ECF No. 94-1 at 20.) The following notice is printed directly beneath the arbitration provision: "NOTICE: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION." (*Id.*)

Following the Court's decision granting the defendants' motions to compel arbitration, plaintiff Deborah Moss submitted her claims to the National Arbitration Forum ("NAF"). On January 30, 2015, Moss received a letter from the NAF, which stated:

> Please be advised that we are no longer able to accept arbitration claims involving consumers pursuant to a Consent Judgment entered in Hennepin County District Court in July 2009 between the Minnesota Attorney General and the National Arbitration Forum.

(Pl. Ex. B, ECF No. 94-1 at 103).

On February 13, 2014, Moss filed a motion to vacate the June 9, 2014 Order, on the grounds that the NAF—the forum designated in the SFS Loan Agreements— declined to arbitrate the case. The parties do

2

not dispute that the NAF is unavailable as an arbitral forum.

Defendants opposed the motion on March 2, 2015, and Moss submitted her reply on March 9, 2015. The Court heard oral argument on May 21, 2015. (*See* Transcript, ECF No. 102.) This matter is fully submitted, and the Court has carefully considered the applicable law and the parties' arguments.

## II. DISCUSSION

Although there is no dispute that the NAF is unavailable as an arbitral forum, defendants oppose the motion on two grounds. First, defendants argue that plaintiff was aware, at the time the motion to compel arbitration was originally argued, that the NAF was barred by a consent decree from hearing this case. Defendants argue that plaintiff strategically elected not to raise this issue in the original briefing, and that plaintiff is therefore precluded from asserting this argument at this juncture. Second, the defendants argue that 9 U.S.C. § 5 permits the Court to name a substitute arbitration forum under these circumstances. The Court addresses each of these arguments in turn.

### A. Procedural Viability of the Motion

Defendants argue that Moss's motion is essentially a motion for reconsideration of the Court's initial ruling compelling arbitration. A motion for reconsideration is appropriate when a party can point to "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Moreover, a party may not raise an argument for the first time in a motion for reconsideration. *Image Processing Techs., LLC v. Canon Inc.,* No. 10-CV-3867 (SJF) (ETB), 2012 U.S. Dist. LEXIS 9479, at *4 (E.D.N.Y. Jan. 26, 2012) (citing *Church of Scientology Int'l v. Time Warner, Inc.*, No. 02 Civ. 3024 (PKL), 1997 U.S. Dist. LEXIS 12839, at *2 (S.D.N.Y. Aug. 27, 1997)). That is because the Court cannot have overlooked decisions or data that were never presented to the court in the first instance.

Here, plaintiff's motion arises from the NAF's decision not to arbitrate the case, which occurred after the original motion was decided. Thus, Moss argues that she could not have presented this argument in opposition to the original motion, which makes it appropriate for her to raise this issue now. Defendants counter that the NAF has been barred from hearing consumer disputes since 2009, and that Moss's counsel knew this at the time the original motion was briefed. As evidence of plaintiff's knowledge, defendants note that plaintiff's briefing in connection with the original motion cited cases that expressly addressed the consent decree that renders the NAF unavailable to hear consumer disputes. Therefore, according to defendants, plaintiff could have raised this issue while the original motion was argued, and her failure to do so precludes her from rearguing the motion to compel arbitration.

Although it would have been perhaps a better practice for Moss's counsel to have apprised the Court of the NAF's unavailability at the time the Court compelled arbitration, it is equally true that defendants were aware of this issue at the time they moved to compel arbitration. Despite this knowledge, defendants failed to notify the Court that they were seeking to compel arbitration before an unavailable forum. Thus, it appears that both sides made a strategic decision not to raise this issue

3

earlier. In any event, plaintiff correctly points out the consent decree only bars the NAF from hearing consumer disputes, and Moss could not have been certain that the NAF would categorize her claims as a consumer dispute until she submitted her case for arbitration.[2] Because the NAF did not formally decline to arbitrate the case until well after the Court rendered a decision on the initial motion to compel arbitration, the Court views the NAF's decision as a changed circumstance that warrants renewed consideration of the parties' duty to arbitrate this case.

Moreover, as a practical matter, the Court's previous ruling directed the parties to arbitrate this case in accordance with the arbitration clause, which the parties obviously cannot now do, because that clause designated a forum that is no longer available. Thus, it is appropriate for Moss to seek relief.

B. Merits of the Motion

Turning to the substance of the motion, the Court again emphasizes that there is no dispute here that the arbitration provision identifies the NAF as the arbitral forum; nor is there any dispute that the NAF cannot arbitrate this case. Instead, the present motion requires the Court to determine whether to appoint a substitute arbitration forum (as defendants urge), or whether the unavailability of the NAF renders the entire arbitration clause unenforceable (as Moss asserts).

---

[2] However, it is not lost upon the Court that plaintiff submitted her claim to the NAF with the following heading, in bold: "Notice of intention to arbitrate consumer debt claim." In fact, the two-page letter uses the term "consumer" no fewer than four times to describe the plaintiff's claims.

The Federal Arbitration Act ("FAA") requires courts to enforce private agreements to arbitrate. *See* 9 U.S.C. § 2. "While the FAA expresses a strong federal policy in favor of arbitration, the purpose of Congress in enacting the FAA 'was to make arbitration agreements as enforceable as other contracts, *but not more so*.'" *Cap Gemini Ernst & Young v. Nackel*, 346 F.3d 360, 364 (2d Cir. 2003) (quoting *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967)) (emphasis in original). Thus, although the FAA creates a presumption in favor of arbitration, "that presumption does not apply to the threshold issue of whether the parties agreed to arbitrate at all, which is strictly a matter of consent, and determined based on principles of contract law." *Crewe v. Rich Dad Educ.*, 884 F. Supp. 2d 60, 70 (S.D.N.Y. 2012) (internal quotations omitted). When interpreting an arbitration provision, courts have held that the unavailability of a designated arbitration forum will render an arbitration provision unenforceable, if the language of the contract makes clear that the designated forum was intended to be the "exclusive" arbitral forum. *See Wendrovsky v. Chase Paymentech*, No. 12 Civ. 0704 (AJN), 2012 U.S. Dist. LEXIS 150866, at *26 (S.D.N.Y. Oct. 15, 2012) ("Unavailability of a selected arbitrable forum precludes enforcement of an arbitration provision if the unavailable forum is the 'exclusive' one chosen for arbitration under the contract."). Thus, the Court must interpret the arbitration agreement here to determine whether the parties agreed to proceed before the NAF as the exclusive arbitral forum.

To determine the parties' intent, the Court turns to the text of the arbitration clause. The agreement designates the NAF as the selected arbitration forum, and does not appear to contemplate arbitration before

4

any other forum. The clause simply states that "You and we agree that any and all claims, disputes or controversies between you and us . . . shall be resolved by binding individual (and not joint) arbitration by and under the Code of Procedure of the National Arbitration Forum ("NAF") in effect at the time the claim is filed." The clause is silent as to how the parties should proceed in the event that the NAF is unavailable to resolve the dispute.[3]

In support of Moss's argument that she did not agree to arbitrate her claim before any forum besides the NAF, plaintiff chiefly relies upon the Second Circuit's decision in *In re Salomon Shareholders' Derivative Litig.*, 68 F.3d 554, 560-61 (2d Cir. 1995). That case involved a shareholder derivative suit against several former executives of Salomon Brothers, who sought to invoke an arbitration provision in their employment agreement stating that any disputes with their employer would be decided by the New York Stock Exchange ("NYSE"). *Id.* at 556. The NYSE declined to resolve the dispute, and the Second Circuit held that the plaintiffs could not be compelled to arbitrate their claims before a different forum. *Id.* at 557-59. The Court reasoned that the plain text of the agreement, which designated the NYSE as the arbitral forum, reflected an intent to arbitrate exclusively before the NYSE. *Id.* Although Section 5 of the FAA (9 U.S.C. § 5) permits courts to appoint a substitute arbitrator when there is "a lapse in the naming of an arbitrator or arbitrators or umpire," the Second Circuit held that Section 5 does not authorize such a substitution when private parties agree to arbitrate exclusively before a specific forum, which subsequently becomes unavailable. *Id.* at 560 ("We are not unaware that some district courts have appointed new arbitrators when the named arbitrators could not or would not proceed. . . . None of these cases, however, stands for the proposition that district courts may use § 5 to circumvent the parties' designation of an exclusive arbitral forum."). Thus, the holding of *In re Salomon* is that an arbitration provision cannot be enforced if the parties exclusively agreed upon an arbitral forum, and that forum is no longer available. Moss argues that this is the exact situation in which she finds herself, and that she cannot be compelled to arbitrate her claims. The Court agrees.

The defendants' efforts to distinguish *In re Solomon* are not persuasive. Defendants assert that the ruling in *In re Salomon* depended upon two primary factors that are not present here: (1) the defendants' considerable delay in seeking to compel arbitration in that case, and (2) the unsuitability of the NYSE for the resolution of a complex shareholder derivative action. *In re Salomon* does not bear this interpretation, however, because the Second Circuit repeatedly emphasized that its ruling was based upon a textual interpretation of the parties' agreement. *See id.* at 558 ("We look, then, to the text of the arbitration agreements themselves."). To apply that textual approach here, the Court has compared the agreement in *In re Salomon* to the SFS Loan Agreements, and finds no meaningful distinction. There, as here, the parties agreed to resolve all disputes before a specific forum.[4] Neither clause explicitly

---

[3] In this respect, this case is distinct from *Wendrovsky v. Chase Paymentech*, No. 12 Civ. 0704 (AJN), 2012 U.S. Dist. LEXIS 150866, at *27 (S.D.N.Y. Oct. 15, 2012) and *Crewe v. Rich Dad Educ.*, 884 F. Supp. 2d 60, 77 (S.D.N.Y. 2012), which both addressed agreements containing express assent to arbitration before a substitute forum if the NAF became unavailable.

[4] The text of the agreement in *In re Salomon* was as follows: "any controversy between [the defendant]

states that this forum is the "only" or "exclusive" forum, and neither clause provides guidance as to how to proceed if the designated forum is unavailable. As such, it appears that *In re Salomon* holds that no such language is required to transform an agreement to arbitrate a claim before a specific forum into an agreement to arbitrate a claim *exclusively* before that forum. In other words, the language of the agreements simply states an intention to arbitrate before a specific forum, and does not express any intention to arbitrate generally, or arbitrate before a substitute forum. When the text of an arbitration agreement evinces an intent to arbitrate solely before a specific forum, *In re Salomon* tells us that a court may not override the parties' agreement and appoint a substitute arbitrator.

Defendants argue that the agreement contains a separate disclaimer that conveys the parties' overriding intent to arbitrate their disputes, regardless of the forum. That clause reads: "NOTICE: YOU AND WE WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND HAVE A JUDGE OR JURY DECIDE THE DISPUTES BUT HAVE AGREED INSTEAD TO RESOLVE DISPUTES THROUGH BINDING ARBITRATION." As an initial matter, the Court disagrees that this notice is an independent contractual clause, because the clause is located at the bottom of the arbitration provision itself. As such, the Court views this clause in tandem with the larger arbitration clause, and concludes that these terms naturally must be read together. Together, this disclaimer clearly reads as an overriding warning to Moss that she is agreeing to arbitrate her claims according to the terms of the arbitration clause, which designates the NAF as the selected forum. Thus, nothing about the disclaimer alters the Court's conclusion that Moss agreed to arbitrate her claims exclusively before the NAF.

The Fifth Circuit has examined a nearly identical agreement to arbitrate before the NAF, and concluded that the unavailability of the NAF rendered the arbitration clause unenforceable. *See Ranzy v. Tijerina*, 393 Fed. Appx. 174, 176 (5th Cir. 2010) ("Here, the arbitration agreement plainly states that Ranzy 'shall' submit all claims to the NAF for arbitration and that the procedural rules of the NAF 'shall' govern arbitration. Put differently, the parties explicitly agreed that the NAF shall be the exclusive forum for arbitrating disputes."). In fact, the disputed arbitration agreement in *Ranzy* contained the exact same disclaimer that is in the agreement Moss signed. *See Ranzy v. Tijerina*, No. 09-CV-3334, ECF No. 15-1 at 2 (S.D. Tex.). Most importantly, the Fifth Circuit held that "we also find this case to be indistinguishable from *In re Salomon*." This Court agrees, and likewise concludes that *In re Salomon* controls here.[5]

---

and any member or member organization arising out of [the defendant's] employment by and with such member or member organization shall be settled by arbitration at the instance of any such party in accordance with the Constitution and rules then obtaining of the [NYSE]." *Id.* at 558.

---

[5] In so holding, the Court rejects defendants' contention that this case is more closely akin to *Erving v. Virginia Squires Basketball Club*, 468 F.2d 1064 (2d Cir. 1972) and *Astra Footwear v. Harwyn Int'l, Inc.*, 442 F. Supp. 907, 910 (S.D.N.Y. 1978), *aff'd*, 578 F.2d 1366 (2d Cir. 1978), both of which permitted the substitution of an arbitrator. Both of these cases were distinguished by *In re Salomon*. The Second Circuit held that *Astra Footwear* was dissimilar because the naming of a specific arbitral forum in that case was not central to the parties' agreement. *In re Salomon*, 68 F.3d at 561. Likewise, the Second Circuit distinguished *Erving* on the grounds that the arbitrator's ethical conflict in that

Defendants offer no meaningful argument that *Ranzy* is distinct. Instead, defendants urge the Court to follow *Khan v. Dell, Inc.*, 669 F.3d 350 (3d Cir. 2012) and *Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787 (7th Cir. 2013), which both determined that it was appropriate to appoint a substitute arbitration forum to salvage an arbitration provision that named the NAF as the arbitration forum. However, *Khan* and *Green* both expressly rejected the Second Circuit's reasoning of *In re Salomon*, a decision that this Court is not at liberty to make. *See Khan*, 669 F.3d at 356 ("We find *In re Salomon* unpersuasive."); *Green*, 724 F.3d at 790-92 ("We are skeptical of decisions that allow a court to declare a particular aspect of an arbitration clause 'integral' and on that account scuttle arbitration itself."). Although other circuits may disagree with *In re Salomon*, their disagreement makes it all the more clear that *In re Salomon* is applicable here, and this Court is bound to follow Second Circuit precedent. Accordingly, the Court declines to follow *Green* and *Khan*.

In sum, this Court concludes that the agreement to arbitrate before the NAF was integral to the arbitration provision. Under *In re Salomon*, the unavailability of the designated arbitration forum renders the entire arbitration agreement void. Therefore, Moss cannot be compelled to arbitrate her claims.

### III. CONCLUSION

For the reasons set forth herein, the Court concludes that plaintiff cannot be compelled to arbitrate her claims against Bay Cities Bank and First Premier Bank. Accordingly, the motion for relief from the Court's June 9, 2014 Order is granted, and the stay of plaintiff's claims against Bay Cities Bank and First Premier Bank is hereby lifted.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: July 16, 2015
      Central Islip, NY

\*\*\*

Plaintiffs are represented by Darren T. Kaplan, Chitwood Harley Harnes LLP, 11 Grace Avenue, Suite 306, Great Neck, NY 11021; Jeffrey Ostrow, Kopelowitz Ostrow P.A., 200 SW 1st Avenue, Fort Lauderdale, FL 33301; Hassan Zavareei and Jeffrey D. Kaliel, Tycko & Zavareei LLP, 2000 L Street NW, Suite 808, Washington, DC 20036; Norman Siegel and Stephen N. Six, Stueve Siegel Hanson LLP, 460 Nichols Road, Suite 200, Kansas City, MO 64112. Defendant BMO is represented by Therese Craparo, Debra Bogo-Ernst, Kevin Ranlett, Lucia Nale, and Matthew Sostrin, Mayer

---

case presented a true "lapse" within the meaning of Section 5. Although the distinctions *In re Salomon* drew may be fine indeed, this Court emphasizes, again, that it is bound to follow Second Circuit precedent. There can be no real dispute that *In re Salomon* is controlling precedent here, because the circumstances of this case are virtually identical. Here, the Court granted the motion to compel arbitration, the case was referred to the NAF, and the NAF declined to resolve the dispute. This is precisely what occurred in *In re Salomon*, where the district court granted the motion to compel arbitration, the case was referred to the NYSE, and the NYSE declined to hear the case. Thus, the Court cannot conclude that there has been a "lapse" here such that the Court is authorized to appoint a substitute arbitrator.

7

Brown LLP, 71 S Wacker Drive, Chicago, IL 60606; Defendant First Premier is represented by David Todd Feuerstein, Herrick, Feinstein LLP, 2 Park Avenue, New York, NY 10016, and John C. Elkman, Bryan Freeman, and James P. McCarthy, Lindquist & Vennum, 4200 Ids Center, 80 South 8th Street, Minneapolis, MN 55402; Defendant Bay Cities is represented by Eric Rieder, Ann W. Ferebee, Courtney Janae Peterson, and Michael P. Carey, Bryan Cave LLP, 1201 W Peachtree Street NW, 14th Floor, Atlanta, GA 30309.