UNITED STATES DISTRICT COURT          **NOT FOR PUBLICATION**
EASTERN DISTRICT OF NEW YORK

DEBORAH MOSS, individually and on behalf          **MEMORANDUM AND ORDER**
of all others similarly situated,

                            Plaintiff,

           – against –                              2:13-cv-05438 (ERK) (AYS)

FIRST PREMIER BANK,

                            Defendant.

KORMAN, *J.*:

     Plaintiff Deborah Moss obtained a $350 payday loan from SFS, Inc., an online

payday lender, in June 2010.  The loan agreement disclosed an annual interest rate

of 995.45% and a finance charge of $105.  "When a payday lender such as SFS

agrees to loan a customer money, it relies on banks to serve as middlemen to debit

the customer's account. These banks are known as 'Originating Depository

Financial Institutions,' or 'ODFIs.' First Premier Bank . . . served as an ODFI for

one of Moss's payday loans with SFS."  *Moss v. First Premier Bank*, 835 F.3d 260,

262 (2d Cir. 2016).  Defendant First Premier Bank did not loan money to Plaintiff

directly, but instead received payment for its part in the transaction.  Plaintiff claims

that by so doing, Defendant "unlawfully facilitated high-interest payday loans that have been outlawed in several states." *Id.* at 263.

In her loan application with SFS, Plaintiff agreed to arbitrate any disputes relating to the loan and, separately, not to bring any claims against SFS or its agents or servicers as a class action. That latter agreement read:

> To the extent permitted by law, by signing below or electronically signing you agree that you will not bring, join or participate in any class action as to any claim, dispute or controversy you may have against us or our agents, servicers, directors, officers and employees. . . . This agreement not to bring, join or participate in class action suites [sic] is an independent agreement and shall survive the closing, funding, repayment, and/or default of the loan for which you are applying.[1]

## PROCEDURAL HISTORY

This case has a lengthy procedural history, which I briefly recount here.  In September 2013, Plaintiff filed a complaint against Defendant and two other banks, asserting RICO and state-law claims based on their alleged facilitation of unlawful payday loans.  After Plaintiff amended her complaint, Judge Bianco compelled arbitration. 24 F. Supp. 3d 281 (E.D.N.Y. 2014).  Judge Bianco held that Plaintiff's claims were sufficiently intertwined with the loan agreement to allow the banks to enforce the agreement's arbitration clause, because it was foreseeable that the banks

---

[1]   Unlike the loan application, the loan note's class action waiver extends only to SFS's servicers (not its agents), but as discussed below that distinction is not material.

would act as the lender's "'servicers' or 'agents'" as set out in that agreement.  *Id.* at 290.

Once the parties determined that the contract's designated arbitrator no longer conducted consumer arbitrations, Judge Bianco vacated his order compelling arbitration.  114 F. Supp. 3d 61 (E.D.N.Y. 2015), *aff'd* 835 F.3d 260 (2d Cir. 2016). Judge Bianco next dismissed Plaintiff's RICO claims and her claim under New York's General Business Law, but held that she stated a claim for unjust enrichment. 258 F. Supp. 3d 289 (E.D.N.Y. 2017).

Judge Bianco then granted leave to file the operative Third Amended Complaint, in which Plaintiff asserts a single RICO conspiracy claim against First Premier alleging that it facilitated the collection of unlawful debts.  Defendant now seeks partial summary judgment to prevent Plaintiff from proceeding on a class-wide basis.  I granted Defendant's motion to stay class discovery while this motion was pending.

## STANDARD OF REVIEW

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  "In determining whether there is a genuine dispute as to a material fact, [I] resolve all ambiguities and draw all inferences in favor of the non-moving party."  *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d

3

Cir. 2013) (internal citation omitted).  Courts may enforce class action waivers under Rule 56.  *See, e.g.*, *U1it4Less, Inc. v. FedEx Corp.*, 2015 WL 3916247, at *1 (S.D.N.Y. June 25, 2015); *Kubischta v. Schlumberger Tech Corp.*, 2016 WL 3752917, at *3 (W.D. Pa. July 14, 2016).

## DISCUSSION

### I.   Choice of Law

The enforceability of a class action waiver, when divorced from an arbitration agreement, is a matter of state contract law.  *U1it4Less*, 2015 WL 3916247, at *4; *Korea Week, Inc. v. Got Capital, LLC*, 2016 WL 3049490, at *6 (E.D. Pa. May 27, 2016).  Although the loan agreement contains a choice-of-law clause incorporating the "laws of the jurisdiction in which the Lender is located," Defendant in its opening brief "assumes for purposes" of this motion that New York law governs whether it can enforce the class action waiver, "because the applicability of New York law is a necessary predicate to Ms. Moss's claim against First Premier[.]"  Still, nothing prevented Defendant from asserting that another jurisdiction's laws applied. Defendant instead stated that it "fully reserves its rights" to argue that the choice-of-law provision applied, but then proceeded to argue that New York law permitted it to enforce the class waiver.  For her part, Plaintiff contends that New York law applies because she was a citizen of New York at the time she obtained the loan.

In its reply brief and response to the sur-reply, however, Defendant attempts to retreat from its assumption that New York law governs, arguing that Plaintiff failed to prove that New York law applies given the choice-of-law provision. Even so, Defendant continues to rely primarily on New York cases.

Defendant has also not shown what law would apply under the choice-of-law agreement. That provision incorporates the "laws of the jurisdiction in which the Lender is located," but Defendant's Rule 56.1 statement does not say where SFS was located. Nor does Defendant point to evidence in the record substantiating its claim that SFS was located in the Santee Sioux Nation of Nebraska. Instead, in its response to Plaintiff's sur-reply, it merely relies on a document stating SFS's Nebraska address (which does not reference the Santee Sioux Nation) and on an affidavit it filed in 2014 stating that SFS is "wholly owned and operated by the Santee Sioux Nation of Nebraska" but not that SFS is *located* in the Santee Sioux Nation.[2] Indeed, despite filing three briefs, Defendant has not made any showing of what Santee Sioux Nation law is in this context, notwithstanding that Judge Bianco

---

[2]    As Plaintiff notes, there is reason to doubt that SFS was located in the Santee Sioux Nation, because SFS admitted in a Non-Prosecution Agreement that it was operated out of Kansas and not by the Santee Sioux Nation. *See* https://www.justice.gov/usao-sdny/press-release/file/1074916/download; *see also United States v. Grote*, 961 F.3d 105, 112 (2d Cir. 2020) (describing trial evidence that Defendant's alleged co-conspirator used "sham business office facilities" on tribal land, "while in reality all the loan processing took place in Kansas").

put the parties on notice that "a court may choose to apply the law of the forum state where the parties have not adequately advised the court of foreign law."  24 F. Supp. 3d at 286 n.6 (quoting *Dornberger v. Metro Life Ins. Co.*, 961 F. Supp. 506, 530 (S.D.N.Y. 1997)).

Because "[t]he parties' briefs assume that New York law controls," I conclude that Defendant's "implied consent . . . is sufficient to establish choice of law." *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000) (internal quotation omitted); *see also Am. Fuel Corp. v. Utah Energy Dev. Co., Inc.*, 122 F.3d 130, 134 (2d Cir. 1997) ("[W]here the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.").  Defendant has had every opportunity to make its case for another forum's law and has avoided confronting the issue squarely.  Additionally, the weight of authority requires New York courts to apply New York's usury laws for loans to New Yorkers even when the parties have contracted to apply another jurisdiction's law, based on the state's "fundamental" public policy.  *See Madden v. Midland Funding, LLC*, 237 F. Supp. 3d 130, 149–51 (S.D.N.Y. 2017) (collecting cases).

## II.   <u>Whether The Class Action Waiver Is Enforceable</u>

The parties make several arguments regarding the enforceability of the class action waiver, which I address in turn.

### A.   <u>Defendant Is A "Servicer" or "Agent" Under the Loan Agreement</u>

Judge Bianco previously concluded that Defendant is a "servicer" or "agent" of the lender such that it could enforce the loan agreement's arbitration clause under principles of equitable estoppel, because Defendant facilitated the transfer of funds from the lender to Plaintiff.  24 F. Supp. 3d at 289–90.  Plaintiff has not provided a convincing reason to depart from that analysis for purpose of enforcing the class waiver.  She argues that SFS's agreement with a third party that neither would be an agent of the other is probative of the relationship between SFS and Defendant, because that third party acted as an intermediary between the two.  That argument lacks merit.  Even putting aside Plaintiff's reliance on a contract between nonparties to shed light on whether Defendant was an agent of SFS, a "contractual clause stating that a person or entity is or is not an agent is, of course, not dispositive of the issue." *XL Specialty Ins. Co. v. Prestige Fragrances, Inc.*, 420 F. Supp. 3d 172, 194 n.22 (S.D.N.Y. 2019) (collecting cases).

Curiously, Plaintiff makes this argument despite conceding "it is clear that First Premier is an agent, not a servicer," while arguing that I must distinguish between the two because the loan's note covers only servicers but not agents. Regardless, Defendant convincingly explains that, as the originating financial institution, it also qualifies as a "servicer" of the loan made by SFS.  *See Labajo v. First Int'l Bank & Tr.*, 2014 WL 4090527, at *9 (C.D. Cal. July 9, 2014) (concluding

that an ODFI acts as a "servicer" because it initiates the lender's transaction); *see also* 258 F. Supp. 3d at 307 (concluding in this case that plaintiff's allegations "establish that defendant merely provided professional services to . . . SFS") (internal quotation omitted).

### B.   The Class Action Waiver Is Void

Plaintiff's principal argument is that the class action waiver is invalid because it is a provision of an unlawfully usurious contract.  She rightly notes that, as the Second Circuit has explained, "contracts with an [annual] interest rate exceeding 16% are unenforceable under New York's civil usury law," which Plaintiff's payday loan far exceeded.  *United States v. Grote*, 961 F.3d 105, 120 (2d Cir. 2020) (citing N.Y. BANKING LAW § 14-a(1); N.Y. GEN. OBLIG. LAW § 5-501).  Plaintiff's loan is therefore "usurious on its face."  *Adar Bays, LLC v. Genesys ID, Inc.*, 962 F.3d 86, 89 (2d Cir. 2020); *Hope v. Contemporary Funding Grp.*, 128 A.D.2d 673, 673 (2d Dep't 1987).[3]

New York law further provides that "[a]ll bonds, bills, notes, assurances, conveyances, all other contract or securities whatsoever . . . whereupon or whereby there shall be reserved or taken . . . any greater sum, or greater value, for the loan or

---

[3]     I am "bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion.  There is no such evidence here." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010) (internal citations omitted).

forbearance of any money, . . . than is prescribed in section 5-501, shall be void." *Grote*, 961 F.3d at 119–20 (quoting N.Y. GEN. OBLIG. LAW § 5-511). Thus, when an usurious interest rate is invalid, "the borrower is relieved of all further payment— not only interest but also outstanding principal. . . . In effect, the borrower can simply keep the borrowed funds and walk away from the agreement." *Seidel v. 18 E. 17th Street Owners, Inc.*, 79 N.Y.2d 735, 740 (1992).

Plaintiff is correct that when a contract violates New York's civil usury statute, that contract is "void *ab initio*." *Adar Bays,* 962 F.3d at 88. "[W]hen a court deems a transaction to be usurious, it must declare the transaction and its supporting documents void, enjoin prosecution on them and order that all documents and collateral be canceled and surrendered." *Szerdahelyi v. Harris*, 67 N.Y.2d 42, 48 (1986). The New York Court of Appeals has explained that when a loan is void for usury, "the underlying transaction and supporting documents have *no legal force or binding effect*." *Id.* (emphasis added). And where "the main objective of an agreement is illegal"—here, providing a loan at an unlawful interest rate—"courts will not sever and enforce incidental legal clauses." *Carruthers v. Flaum*, 365 F. Supp. 2d 448, 468 (S.D.N.Y. 2005) (internal citations omitted). Accordingly, when a contract is void *ab initio*, that invalidity extends even to procedural matters in the contract like a forum selection clause. *DeSola Grp., Inc. v. Coors Brewing Co.*, 199

A.D.2d 141, 141–42 (1st Dep't 1993); *see also Signature Fin. LLC v. Neighbors Global Holdings, LLC*, 281 F. Supp. 3d 438, 446 (S.D.N.Y. 2017).[4]

Thus, under New York law, the class action waiver is invalid along with the rest of the contract.  Defendant's cases are distinguishable, because they do not involve the rare instance in which public policy invalidates the entire contract and supporting documents.  *Cf. Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey*, 448 F.3d 573, 581 (2d Cir. 2006) (concluding that New York's hospital payment statute invalidates only directly-conflicting contractual terms because that statute specifically "does not abrogate the [contract] *in toto* but only the part that contravenes New York public policy"); *Am. Equities Grp., Inc. v. Ahava Dairy Prod. Corp.*, 2007 WL 4563487, at \*5–6 (S.D.N.Y. Dec. 18, 2007) (enforcing contract's jury trial waiver while noting uncertainty whether a criminally usurious loan is void, but explaining that a loan violating the civil usury statute is void).

Contrary to Defendant's suggestion, Judge Bianco's initial order compelling arbitration does not indicate that he concluded the contract or its procedural provisions are valid as a matter of state law.  Rather, his ruling was based on

---

[4]   Defendant cites several cases expressing uncertainty whether a contract that violates the *criminal* usury law is void, but the law is clear that a contract violating the civil usury statute is void.  The civil usury statute applies here because Plaintiff is a natural person.  *Adar Bays*, 962 F.3d at 89.  A corporation, by contrast, can only invoke the criminal usury statute as a bar to enforcement of a usurious loan.  *Id.* at 92 n.8.

substantive federal arbitration law, which provides that "the legality of the loan agreements is first a question for the arbitrator[.]"  24 F. Supp. 3d at 290 (citing *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006)).  Since the arbitration clause has been held unenforceable, however, that challenge must now be resolved in court based on state law.

Finally, I disagree with Defendant that the class waiver contained in the loan application (as distinct from the note) is enforceable merely because the application did not repeat the interest rate.  The First Department has explained that when a loan is void as usurious, the entire "loan transaction and the associated note, loan agreement, and collateral agreement are [all] void and unenforceable."  *Blue Wolf Capital Fund II, L.P. v. Am. Stevedoring Inc.*, 105 A.D.3d 178, 184 (1st Dep't 2013); *see also Szerdahelyi*, 67 N.Y.2d at 48.  Here, moreover, the application and note "were executed on the same date, both were executed between [the] same parties, and the Note was attached to the Loan Agreement."  *Sea Spray Holdings, Ltd. v. Pali Fin. Grp., Inc.*, 269 F. Supp. 2d 356, 360 (S.D.N.Y. 2003).  In that context, the "two documents represent a single, integrated transaction and must be taken together."  *Id.*  After all, Plaintiff was not in the market for a loan application; she sought the loan itself.  Therefore, the usurious interest rate contained in the loan note is inextricable from the application and renders its class action waiver unenforceable, too.

11

In sum, Plaintiff has persuasively explained why, under New York law, the class action waivers contained in the loan application and note are unenforceable.

## CONCLUSION

Plaintiff has not yet demonstrated that she is entitled to class certification.  I hold only that Defendant has not shown that it would be proper to dismiss the class allegations based on the contract Plaintiff signed.  Accordingly, Defendant's motion for partial summary judgment is denied and the stay of discovery is vacated.

**SO ORDERED.**

Brooklyn, New York
September 2, 2020

*Edward R. Korman*
Edward R. Korman
United States District Judge