

2727 Paces Ferry Road SE
One Paces West, Suite 750
Atlanta, Georgia 30339

1359 Broadway, Suite 2001
New York, New York 10018

**Darren T. Kaplan**
404.537.3300, ext. 101
212.999.7370, ext. 101
404.537.3320 (fax)
dkaplan@kaplangore.com
*Admitted in CT, GA and NY*

**VIA ECF**

October 14, 2020

Hon Anne Y. Shields
United States Magistrate Judge
United States District Court
Eastern District of New York
100 Federal Plaza P.O. Box 830
Central Islip, NY 11722

Re.:   *Moss v. First Premier Bank.*, Case No. 13-cv-5438

Dear Magistrate Judge Shields:

I represent plaintiff Deborah Moss ("Moss") in the above-captioned matter and I write along with Bryan Freeman, attorney for defendant First Premier Bank ("First Premier") the following Joint Letter as directed by the Court's Order of October 7, 2020.

**1.     The Name of the Case**

The name of the case is now "DEBORAH MOSS, individually and on behalf of all others similarly situated, against FIRST PREMIER BANK."

**2.     Basis for Federal Jurisdiction**

This is an action alleging violations of 18 U.S.C § 1962(d). Pursuant to 18 U.S.C.§ 1964(a), the district courts of the United States have jurisdiction to prevent and restrain violations of 18 U.S.C. § 1962. Alternatively, this Court has jurisdiction under 28 U.S.C. § 1332, as amended by the Class Action Fairness Act of 2005, because this lawsuit has been brought as a class action, the aggregate claims of the putative Class members exceed $5 million, exclusive of interest and costs, and one or more of the members of the putative Class is a resident of a different state than Defendants.

First Premier does not join in Ms. Moss's jurisdictional statement. Based on information learned in this case in April 2019, First Premier believes the Court may lack subject-matter jurisdiction now, and have lacked subject-matter jurisdiction when it granted Ms. Moss' motion to amend. Ms. Moss's initial disclosures assert damages of $583.15. But Ms. Moss received $1,235 from the FTC in September 2018 in connection with her loans, at a time when her only claim was for no more than 25 cents. This is in addition to

money Ms. Moss received from a different ODFI, the amount of which Ms. Moss has refused to disclose in discovery, leading to a discovery dispute.

### 3. Service Upon Defendants the Parties

All defendants have been served and have answered.

### 4. Statement as to Counterclaims or Crossclaims

There are no counterclaims or crossclaims.

### 5. Plaintiff's Explanation of the Facts of the Case as Currently Known to Plaintiff

*Background*
Payday loans—small, closed-end loans due in full on the borrower's next "payday"—have a long and sordid history. For years, unscrupulous lenders have taken advantage of desperate borrowers who are unable to obtain funds anywhere else to make ends meet, by offering loans at usurious and unconscionable rates. Arizona, Arkansas, Connecticut, the District of Columbia, Georgia, Maryland, Massachusetts, Montana, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Vermont, and West Virginia, and the District of Columbia prohibit payday loans or have usury limits that effectively prohibit payday loans within their jurisdictions (collectively, the "Prohibited Payday Loan States").

*Scott Tucker and his Payday Lender Entities*
In order to get around these prohibitions (and licensing requirements in other states), Scott Tucker ("Tucker") operated a nationwide payday lending business from Kansas City, Missouri using entities known as Ameriloan, f/k/a Cash Advance ("Ameriloan"), One Click Cash, f/k/a Preferred Cash Loans ("One Click Cash") , United Cash Loans, US FastCash, 500 Fast Cash, Advantage Cash Services and Star Cash Processing (the "Tucker Payday Lenders"). Tucker also operated a loan servicing entity for the Tucker Payday Lenders called AMG Services, Inc. ("AMG"). The Tucker Payday Lenders generated enormous revenues and profits. From approximately 2003 to 2012, the Tucker Payday Lenders generated over $2 billion in revenues, from which Scott Tucker, received hundreds of millions of dollars in profits.

In an attempt to avoid civil and criminal liability, Tucker entered into sham business relationships with some Native American Tribes (the "Tribes") in order to claim that the states could not regulate his payday loan business because of "tribal sovereign immunity." Notwithstanding the false façade of tribal ownership, Tucker owned, operated, and made all relevant decisions regarding the Tucker Payday Lenders and received as much as 100% of the profits the Tucker Payday Lenders generated.[1]

---

[1] On October 13, 2017, Scott Tucker was convicted in the Southern District of New York on fourteen counts of racketeering, conspiracy, and fraud offenses arising out of his operation of this



Hon. Anne Y. Shields
October 14, 2020
Page 3

### *ACH Loan Repayments and First Premier*

Borrowers who obtained payday loans form the Tucker Payday Lenders were required to authorize that loan proceeds and loan repayments would be electronically credited to and debited from their demand deposit bank accounts via ACH ("ACH Authorization"). The ACH transactions at issue here involve multiple parties and multiple steps. First an originator (the Tucker Payday Lenders) would originate a debit or credit instruction to their third-party sender or third-party-processor, an entity known as InterceptETF or later, simply "Intercept" and Intercept would then send the debit or credit instruction to an "Originating Depository Financial Institutions ("ODFI") who would place the actual instruction on the ACH network to credit or debit the borrower's account. ODFIs have special duties to prevent fraudulent and unlawful transactions from entering the Automated Clearing House ("ACH") network.

First Premier is a state-chartered bank in South Dakota that was one of the most active ODFIs for the Tucker Payday Lenders. In August 2008, First Premier accepted Intercept as a client for ACH processing. Over at least the next two years, First Premier originated tens of thousands of debits from borrowers' accounts on behalf of the Tucker Payday Lenders with a cumulative value estimated at hundreds of millions of dollars.

### *ACH Requests for Authorization*

After First Premier debited a Tucker Payday Lender borrower's account via ACH, a borrower would sometimes complain to their own bank that the debit was not authorized by the borrower. Under rules that govern the ACH network, the borrower's bank would then transmit a "Request for Authorization" ("RFA") to First Premier. First Premier would then request that Intercept provide proof of the borrower's authorization for the debit and Intercept would, in turn, request that authorization from one of the Tucker Payday Lenders. The Tucker Payday Lender would respond by faxing much of the underlying loan documentation including the entire promissory note and loan disclosures. That information would then be transmitted back to First Premier which would then be able to see the borrowers' home address, and the disclosed interest rate of the payday loan which was never less than 300%.

The Loan Notes and Disclosures were all identical apart from logos, the name of the purported lender and the specific loan terms. The terms themselves showed the entities were lending the same small dollar amounts to borrowers in multiple states at the same interest rates that were self-evidently multiples of permissible state interest rates. The entities even responded the same way to First Premier's requests, sending multiple pages of a Loan Note and Disclosure when the authorization being requested only appears on a single page. Tellingly, every page of every Loan Note and Disclosure bore the URL https://live.ecahs.eplatflat.com (. . .) indicating that all the Tucker Payday Lenders shared the same document server.

---

illegal payday lending scheme. That conviction was recently affirmed by the Second Circuit. *See*, *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).


Hon. Anne Y. Shields
October 14, 2020
Page 4

First Premier received these notes and disclosures indicating the Tucker Payday Lenders were making loans at a minimum of 300% in the Prohibited Payday Loan States *more than 60 times* prior to the date on which First Premier last debited the Plaintiff's account as described *infra*.

### *Plaintiff's Payday Loan Repayment via ACH Debits*

On or about June 17, 2010, Plaintiff Moss obtained a payday loan in the amount of $350.00 from Tucker Payday Lender "One Click Cash" through the www.oneclickcash.com website. As part of the application process, Plaintiff Moss authorized One Click Cash to debit her checking account with TD Bank in order to repay the loan. The disclosed finance charge on the loan was $105.00. The entirety of the interest plus principal, which equaled $455.00, was scheduled to be paid in two weeks or less. The nominal annual interest rate as stated in the loan agreement was 995.45%. Plaintiff was required to provide an ACH authorization for her deposit account with TD Bank in order to obtain the loan.

On or about June 18, 2010, One Click Cash originated a credit transaction of $350.00 for Plaintiff Moss's checking account in New York through the ACH Network. The ODFI on this transaction was First Premier. Then, from about June 29, 2010 to September 21, 2010, on an original loan of $350.00, First Premier debited repayments from Plaintiff Moss's checking account on behalf of One Click Cash totaling $820.00 over a period of 95 days, representing a simple annual interest rate on the loan of 510.57% and a compound annual interest rate of 2,445.68%.[2]

Prior to making the first debit from Plaintiff Moss's checking account on June 29, 2010, First Premier received documents at least twice showing that One Click Cash was making loans at disclosed interest rates of no less than "730.000%" in Prohibited Payday Loan States including in the Eastern District of New York. Prior to making the last debits from Plaintiff Moss's checking account on September 21, 2010, First Premier received documents at least 18 times showing that One Click Cash was making loans at disclosed interest rates of no less than "365.000%" in Prohibited Payday Loan States including in the Eastern District of New York.

First Premier wishes to make clear that it does not join in Plaintiff's explanation of the fact of the case below. First Premier does not provide its own explanation because it does not understand that to be permitted. First Premier's summary of key facts and background can be found at ECF Nos. 166 and 203.

### 6.      **HIPPA Authorizations**

HIPPA Authorizations are not applicable here.

---

[2] On October 5, 2010, an additional debit of $130.00 was made from Plaintiff's account on behalf of One Click Cash but First Permier has denied that it was the ODFI on that particular transaction. That additiona debit is not included in the above calcualtion of interest paid.



7. **Joint Statement Describing Paper Discovery that can be Exchanged**

The parties exchanged initial disclosures back in October 2017. The parties have since produced paper and electronic documents in response to multiple rounds of requests for production. Most recently, on September 18, 2020, the litigants both served additional documents that had been agreed to be produced prior to the entry of the most recent discovery stay order.

There are significant discovery issues remaining between the parties dating back to Plaintiff's Second Request for Production served back on July 19, 2019 regarding which the parties recently exchanged lengthy written correspondence. These current disputes relate to (1) Ms. Moss's request for ACH transactional data, containing voluminous consumer names and bank account numbers, which Plaintiff seeks for all putative class members as part of Plaintiff's effort to satisfy the requirements of Fed.R.Civ.P. 23(a)-(b) and (2) First Premier's request for disclosure of the amount of additional money Ms. Moss received from a different ODFI, Bay Cities Bank, to settle her claims against Bay Cities, which First Premier believes to have encompassed an October 5, 2010 debit that was part of Ms. Moss's June 17, 2010 loan forming the basis of her claims against First Premier (Moss Decl., ECF No. 128 ¶ 11). Plaintiff responds that no claim based on that debit was ever asserted against Bay Cities Bank. (Second Amended Complaint ¶¶ 95-96 (Doc. 123))

The litigants anticipate bringing these disputes to the Court within the next 30 days if they cannot resolve this issue. First Premier requests the opportunity to submit formal briefing on these issues given their importance and disputes Ms. Moss's claim she "prevailed on both occasions." Because significant briefing on both issues has already taken place and Plaintiff prevailed on both occasions[3], Plaintiff does not believe additional briefing is necessary.

8. **Submission of Joint Status Letter and Proposed Date for Telephone Status Conference**

On September 23, 2020, the parties provided the Court with a proposed schedule of deadlines for completion of discovery and for service of motions. The parties respectfully request that the submission of the joint status letter and telephone conference take place following the proposed

---

[3] Plaintiff maintains the Court construed First Premier's motion to stay the production of the ACH transaction data as a motion for reconsideration and then granted it only to the limited extent of directing the parties "to meet and confer to develop a reasonable protocol for producing the necessary information in a manner that will insure security and reasonable expense to the parties." (Electronic Order of November 5, 2019) Accordingly, Plaintiff contends there should be no further briefing on Plaintiff's entitlement to the ACH transaction data sought. First Premier disagrees with Plaintiff's characterization. The Court's November 5, 2019 Electronic Order specifically stated that First Premier's motion was construed as a motion for reconsideration based on the "the burdens of complying with the subject request" and further stated that if the Parties were not able to resolve their disputes through the meet-and-confer process, "the parties [could] raise the issues again in a new application."

date for the completion of fact discovery which is February 15, 2021.

                         Sincerely,

                         By *s/ Darren T. Kaplan*
                            Darren T. Kaplan, Kaplan Gore LLP

                         By *s/ Bryan R. Freeman*
                            Bryan R. Freeman, Maslon LLP

cc:      All Counsel of Record (via ECF)